1  Michael L. Resch (SBN 202909)
   Email: mresch@mayerbrown.com
2  Andrea M. Weiss (252429)
   Email: aweiss@mayerbrown.com
3  MAYER BROWN LLP
   350 South Grand Avenue, Suite 2500
4  Los Angeles, CA 90071
   Telephone: (213) 229-9500
5  Facsimile: (213) 625-0248

6  Carmine R. Zarlenga (*pro hac vice*)
   Email: czarlenga@mayerbrown.com
7  MAYER BROWN LLP
   1999 K Street, NW
8  Washington, DC 20006
   Telephone: (202) 263-3000
9  Facsimile: (202) 263-3300

10 George S. Arata (SBN 068631)
   ARATA, SWINGLE, SODHI & VAN EGMOND
11 912 11th Street, First Floor
   Modesto, CA 95354
12 Telephone: (209) 522-2211
   Facsimile: (209) 522-2980

13
   Attorneys for Plaintiff FOSTER POULTRY FARMS
14

15              UNITED STATES DISTRICT COURT

16              EASTERN DISTRICT OF CALIFORNIA

17                      FRESNO DIVISION

18

19 FOSTER POULTRY FARMS,                    ) No. 1:11-CV-00030-AWI-SMS
                                            )
20           Plaintiff,                     ) **PLAINTIFF FOSTER POULTRY FARMS'**
                                            ) **OPPOSITION TO DEFENDANT'S MOTION**
21      vs.                                 ) **TO DISMISS THE COMPLAINT UNDER**
                                            ) **FED. R. CIV. P 12(B)(6)**
22 ALKAR-RAPIDPAK-MP EQUIPMENT, INC.        )
   and DOES 1-10,                           ) Date:  April 11, 2011
23                                          ) Time:  1:30 p.m.
           Defendants.                      ) Courtroom: 2
24                                          )
                                            ) Presiding:    Hon. Anthony H. Ishii
25                                          ) Action Filed: December 13, 2010
                                            ) Trial Date:   None Set
26 _____  )
                                            )
27

28

_____
     FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    THE MOTION TO DISMISS STANDARD .......................................................... 3

III.   ALKAR'S MOTION TO DISMISS IS PROCEDURALLY IMPROPER ................ 4

     A.    Courts May Not Interpret Alleged Contract Terms On A Motion
          To Dismiss .................................................................................................. 4

     B.    The Motion Improperly Relies On Facts Outside The Pleadings .................. 7

     C.    The Motion Improperly Asks The Court To Resolve The Parties'
          Factual Disputes ......................................................................................... 7

IV.    ALKAR'S MOTION TO DISMISS THE BREACH OF CONTRACT
      CLAIM MUST FAIL ......................................................................................... 8

V.     THE COMPLAINT PROPERLY ALLEGES CLAIMS FOR BREACH
      OF EXPRESS AND IMPLIED WARRANTY ...................................................... 10

     A.    Foster Farms Has Alleged A Claim For Breach Of Express
          Warranty .................................................................................................. 10

          1.    Alkar's Effort To Require The Court To Interpret The
                Parties' Contract Must Fail .............................................................. 10

          2.    Alkar's Reliance On The California Commercial Code Is
                Misplaced ........................................................................................ 11

     B.    Foster Farms Has Alleged A Claim For Implied Warranty ......................... 12

VI.    THE COMPLAINT ALLEGES A CLAIM FOR EQUITABLE
      INDEMNITY ....................................................................................................... 14

VII.   THE COMPLAINT ALLEGES FACTS SATISFYING THE ELEMENTS
      FOR PROMISSORY ESTOPPEL ...................................................................... 16

     A.    Foster Farms Has Alleged Alkar Made A Clear Promise ........................... 16

     B.    Foster Farms Has Alleged Its Reasonable Reliance On Alkar's
          Promise .................................................................................................... 17

VIII.  THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT ............. 18

IX.    THE MOTION SHOULD BE DENIED IN ITS ENTIRETY BUT IF ANY
      PART OF THE MOTION IS GRANTED, THE COURT SHOULD
      ALLOW LEAVE TO AMEND ........................................................................... 19

X.     CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Int'l Longshoremen's Union Local #10,*
    966 F.2d 443 (9th Cir. 1992) ........................................................................ 17

*Allen v. City of Beverly Hills,*
    911 F.2d 367 (9th Cir. 1990) ........................................................................ 20

*Arpin v. Santa Clara Valley Transp. Agency,*
    261 F.3d 912 (9th Cir. 2001) ..................................................................... 4, 7

*Banco Do Brasil, S.A. v. Latian, Inc.,*
    234 Cal. App. 3d 973 (1991) ......................................................................... 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................... 3

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.,*
    169 Cal. App. 4th 116 (2008) ...................................................................... 12

*CDF Firefighters v. Maldonado,*
    158 Cal. App. 4th 1226 (2008) ...................................................................... 8

*Columbia Natural Res., Inc. v. Tatum,*
    58 F.3d 1101 (6th Cir. 1995) .......................................................................... 4

*Corp. v. Detrex Corp.,*
    4 Cal. App. 4th 1522 (1992) ........................................................... 11, 12, 15

*Daniel v. County of Santa Barbara,*
    288 F.3d 375 (9th Cir. 2002) ..................................................................... 3, 7

*Dore v. Arnold Worldwide, Inc.,*
    39 Cal. 4th 384 (2006) (Baxter, J., concurring) ............................................ 6

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ..................................................................... 19

*Fremont Indem. Co. v. Fremont Gen. Corp.,*
    148 Cal. App. 4th 97 (2007) .................................................................. 1, 4, 5

*Gerlinger v. Amazon.com, Inc.,*
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ........................................................ 19

*Ghirardo v. Antonioli,*
    14 Cal. 4th 39 (1996) .................................................................................. 19

1
2
*Gilligan v. Jamco Dev. Corp.,*
    108 F.3d 246 (9th Cir. 1997) .................................................................................. 3

3
*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
    896 F.2d 1542 (9th Cir. 1990) ............................................................................... 7

4
5
*Hirsch v. Bank of America, N.A.,*
    107 Cal. App. 4th 708 (2003) ................................................................................ 19

6
*Keith v. Buchanan,*
    173 Cal. App. 3d 13 (1985) ................................................................................... 10

7
8
*Lectrodryer v. SeoulBank,*
    77 Cal. App. 4th 723 (2000) ................................................................................. 18

9
10
*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ................................................................................ 14

11
*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) .............................................................................. 19

12
13
*Moore v. Kayport Package Express, Inc.,*
    885 F2d 531 (9th Cir. 1989) ................................................................................. 20

14
15
*Pac. Gas & E. Co. v. G. W. Thomas Drayage etc. Co.,*
    69 Cal. 2d 33 (1968) ..................................................................................... passim

16
*Pac. Sunwear of Cal., Inc. v. Olaes Enters., Inc.,*
    167 Cal. App. 4th 466 (2008) .......................................................................... 13, 14

17
18
*Palestini v. Homecomings Fin., LLC,*
    2010 U.S. Dist. LEXIS 72985 (S.D. Cal. Jul. 20, 2010) ...................................... 18

19
20
*Prince v. Pac. Gas & Elec. Co.,*
    45 Cal. 4th 1151 (2009) ................................................................................... 8, 15

21
*S. Ca. Edison Co. v. Superior Court,*
    37 Cal. App. 4th 839 (1995) ................................................................................. 10

22
23
*S. Pac. Land Co. v. Westlake Farms, Inc.,*
    188 Cal. App. 3d 807 (1987) .................................................................................. 5

24
25
*Smith v. City & County of San Francisco,*
    225 Cal. App. 3d 38 (1990) .............................................................................. 16, 17

26
*Toscano v. Greene Music,*
    124 Cal. App. 4th 685 (2004) ............................................................................... 16

27
28
*Trident Ctr. v. Connecticut Gen. Life Ins. Co.,*
    847 F.2d 564 (9th Cir. 1988) ......................................................................... 1, 4, 5, 6

-iii-

*United States v. Redwood City*,
    640 F.2d 963 (9th Cir. 1981) ................................................................................................3

*Villager Franchise Sys., Inc., v. Dhami, Dhami & Virk*,
    No. CV-F-04-6393, 2006 U.S. Dist. LEXIS 6114 (E.D. Cal. Jan. 26, 2006) .........................19

*W. Pac. R. Corp. v. W. Pac. R. Co.*,
    206 F.2d 495 (9th Cir.1953) ................................................................................................19

*Weinstat v. Dentsply Int'l Inc.*,
    180 Cal. App. 4th 1213 (2010) ...........................................................................................10

**STATUTES**

Cal. Com. Code § 2714 ............................................................................................................12

Cal. Com. Code § 2725(2)..................................................................................................11, 12

Cal. U.C.C. § 2312 ...................................................................................................................13

Cal. U.C.C. § 2313 ...................................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(d)(2) ..............................................................................................................18

Fed. R. Civ. P. 12(b)(6) .........................................................................................................2, 14

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

## I.     PRELIMINARY STATEMENT

In its motion to dismiss, Alkar violates virtually every cardinal rule applicable to such preliminary motions.  Most significantly, Alkar's request that the Court interpret the contract alleged in this case is an invitation to error – under California law and Ninth Circuit precedent, courts are strictly prohibited from interpreting contract terms on a motion to dismiss because the Court must first consider extrinsic evidence.  *Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 569 (9th Cir. 1988) (courts cannot dismiss a claim on the pleadings when it turns on contract interpretation – extrinsic evidence must be considered); *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 114 (2007) ("A court cannot determine based on only the four corners of a document, without provisionally considering any extrinsic evidence offered by the parties, that the meaning of the document is clear and unambiguous").[1]  Alkar also seeks to introduce a multitude of facts to support its arguments found nowhere in the complaint or any of its exhibits.  Alkar then asks the Court to resolve the resulting factual disputes between the parties and to draw a series of substantial inferences in Alkar's favor when the applicable rules require just the opposite.  These defects alone require the motion to be denied.

In the Argument section below, Foster Farms addresses Alkar's motion on a claim by claim basis, but there are other fundamental flaws pervading Alkar's motion that can be summarized as follows:

**1.  Alkar's own Vice-President disagrees with the primary argument of Alkar's counsel.**  The central thrust of Alkar's motion is that under the parties' contract, no indemnity or warranty obligations extended beyond the time of delivery.  However, Alkar's own Vice President Robert Hanson disagrees with the argument of Alkar's counsel.  Nearly one year after delivery of the equipment in question and in direct response to plaintiff's inquiry about Unitherm's patent infringement claim, Alkar's Vice President wrote:

---

[1] There is no dispute that the parties' agreement must be interpreted under California law.  *See* Complaint at Ex. A, ¶ V.13 (California choice of law provision).

1        **Regarding patent issues on our equipment, Alkar-RapidPak stands behind our**

2        **products – including indemnification against patent infringement.**

3  Complaint at Ex. B (the "Hanson Letter") (emphasis added).  If the "time of delivery" argument of

4  Alkar's counsel were at all valid, Mr. Hanson would never have written the assurance letter to Foster

5  Farms.  Instead, he would have written that there is no indemnity obligation post-delivery.  But he did

6  not and hence a dilemma ensues.  And while the debate between Alkar's Vice President and Alkar's

7  counsel may be an interesting one, it is beyond cavil that a Fed. R. Civ. P. 12(b)(6) motion to dismiss

8  is not the proper vehicle for its resolution.

9        Furthermore, Mr. Hanson's assurance was consistent with the extremely broad language of the

10  warranties:

11      By acceptance of this Agreement, Seller warrants to and for the benefit of
       Buyer… (d) that all goods delivered are validly owned by Seller and are

12      delivered to Buyer free from all liens, encumbrances, ***and claims of others of***
       ***every kind and nature***… (f) that all goods delivered are absolutely free from

13      infringement of ***any patent***[.]

14  Complaint at ¶ 12, Ex. A (emphasis added).  In particular, the parties did not limit the warranties to

15  existing claims or existing patents but rather used all encompassing language with no time limitations.

16        **2.  Alkar cannot ignore the contract alleged in the complaint in favor of its own selective**

17  **and contrived version.**  Alkar's motion to dismiss is predicated on a fanciful version of the contract

18  that is markedly different than the one alleged in the complaint.  The complaint alleges that when the

19  2002 Agreement, the Hanson assurance of performance letter, and the additional contract language

20  proffered with it are read together, as California law requires, the analysis leads to only one

21  conclusion.  Rather than address the allegations of the complaint as stated, Alkar conveniently

22  contends that the assurance letter, the additional contract language, and all other evidence should

23  simply be ignored.  Even if the Court were to try to interpret the terms of the parties' agreement at this

24  stage – which it is prohibited from doing – Alkar's approach is contrary to California law applicable to

25  contract interpretation.  The important questions of whether Alkar's Vice President's assurance letter

26  constitutes extrinsic evidence that is relevant to interpreting the parties' 2002 contract, constitutes a

27  contract modification, and/or constitutes a stand alone enforceable promise are all factual questions

28  that turn on the parties' intent and are not appropriate for resolution on a motion to dismiss.

**3.  The representations of Alkar's counsel and the reasonableness of Foster Farms' reliance on them are factual questions.**  If in fact Alkar had no indemnity or warranty obligations after 2002 as Alkar repeatedly argues, why then would Alkar's counsel represent in 2010 that "Alkar's indemnification would be influenced by Foster Farms' extraction of additional concessions from Unitherm?"  If Alkar's counsel actually believed that his client had no obligations to Foster Farms whatsoever, was it not incumbent upon him to so state?  Instead of promising favorable treatment from his client?  Once again, these issues can be debated, but they are not appropriate for resolution on a motion to dismiss and in the absence of evidentiary context.

**4.  Adjudicating the scope of the patent and the issue of infringement are not appropriate on a motion to dismiss.**  Remarkably, Alkar invites the Court to construe the scope of the patent and then to make a determination on the issue of infringement as a result of the placement of the Alkar equipment.  Motion at 14.  Such determinations normally entail a long and costly litigation with expert testimony.  There is little question that the Court cannot make such determinations on a motion to dismiss, and Alkar offers no legal authority to support the dubious proposition that this Court should do so.

For the foregoing reasons and based on the legal arguments below, Alkar's motion should be denied.

## II.    THE MOTION TO DISMISS STANDARD

A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (internal citations omitted).  Indeed, "the accepted rule is that a complaint is not to be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (internal quotations omitted).  For a complaint to survive a motion to dismiss, it must contain "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making a determination on a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).  When a complaint's allegations are capable of more than

1   one inference, the court must adopt whichever inference supports a valid claim.  *Columbia Natural*

2   *Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  Material outside of the complaint (*e.g.*, facts

3   presented in briefs, affidavits, or discovery materials) cannot be considered in ruling on a motion to

4   dismiss.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

5         Of particular significance here, when the analysis of extrinsic evidence is necessary to interpret

6   a contract, or questions of fact exist as to the parties' intent, the Court may not dismiss a contract claim

7   on a motion to dismiss.  *See, e.g.*, *Trident*, 847 F.2d at 569-70 (denying motion to dismiss because

8   extrinsic evidence was necessary to interpret the parties' intent in drafting the contract); *Fremont*, 148

9   Cal. App. 4th at 113-15 (overruling demurrer because interpretation of document required analysis of

10   extrinsic evidence).  The same result is warranted here.

11   **III.**    **ALKAR'S MOTION TO DISMISS IS PROCEDURALLY IMPROPER**

12       **A.**    **Courts May Not Interpret Alleged Contract Terms On A Motion To Dismiss**

13         In interpreting a contract under California law, a court must first determine if the contract is

14   ambiguous – *i.e.*, whether the contract term is susceptible of more than one reasonable interpretation.

15   *Fremont*, 148 Cal. App. 4th at 114.  An ambiguity may appear on the face of an agreement or extrinsic

16   evidence may reveal a latent ambiguity.  *Id*.  As part of its threshold analysis of whether the contract is

17   ambiguous, the court "***must*** first consider extrinsic evidence offered to prove the parties' mutual

18   intention."  *Id*. (emphasis added).  Put another way, the court "cannot determine based on only the four

19   corners of a document, without provisionally considering any extrinsic evidence offered by the parties,

20   that the meaning of the document is clear and unambiguous."  *Id*.  A contrary rule would "either deny

21   the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our

22   language has not attained."  *Pac. Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33, 37

23   (1968).  If after considering the parties' extrinsic evidence the court concludes the contract is

24   ambiguous, the court must admit that evidence for purposes of interpreting the contract.  *Id.* at 39-40.

25         On a motion to dismiss, parties are not permitted to make evidentiary submissions to the Court.

26   *Arpin*, 261 F.3d at 925.  Indeed, the parties may not yet be in possession of all relevant extrinsic

27   evidence at the time of a motion to dismiss because the parties are still at the early stages of discovery.

28   As such, the court will not have before it the parties' extrinsic evidence at the time it rules on a motion

1  to dismiss.  Because a court may not begin its contract interpretation without considering the parties'

2  extrinsic evidence, the law strictly prohibits a court from interpreting a contract on a motion to dismiss.

3  *Trident*, 847 F.2d at 569-70; Fremont, 148 Cal. App. 4th at 114-15; *see also S. Pac. Land Co. v.*

4  *Westlake Farms, Inc.*, 188 Cal. App. 3d 807, 816-17 (1987) (reversing trial court's interpretation of the

5  contract on demurrer because it deprived the plaintiff an opportunity to submit extrinsic evidence).

6  Accordingly, a court cannot dismiss a claim on a motion to dismiss based on the defendant's

7  interpretation of the agreement.  *Id.*

8         The rule prohibiting a court from interpreting a contract on a motion to dismiss applies even

9  where the court is convinced that the contract language is clear and unambiguous.  *See Trident*, 847

10  F.2d at 569-70.  In *Trident*, for example, the district court interpreted a term in a loan agreement

11  between sophisticated parties – an insurance company, on the one hand, and two large law firms and

12  another insurance company, on the other.  The contract term at issue provided that there shall be no

13  "right to prepay the principal amount hereof in whole or in part" for the first 12 years.  When interest

14  rates dropped, the borrower (Trident) sued the lender (Connecticut General) seeking a declaration that

15  it was entitled to prepay the loan subject to a 10 percent penalty.  The district court concluded on the

16  lender's motion to dismiss that the term was unambiguous and did not allow Trident to prepay within

17  the first 12 years.  The court granted the lender's motion to dismiss and *sua sponte* sanctioned Trident

18  for filing a frivolous lawsuit.

19         The Ninth Circuit also believed that the contract term was clear:

20         The contract documents are lengthy and detailed; they squarely address the
       precise issue that is the subject of this dispute; to all who read English, they

21         appear to resolve the issue fully and conclusively.

22  *Id*.  Nonetheless, the Ninth Circuit reversed the trial court's decision because the court was required to

23  consider extrinsic evidence before interpreting the agreement under California law: "it matters not how

24  clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor

25  how squarely it addresses the issue before the court: the contract cannot be rendered impervious to

26  attack by parol evidence."  *Id*. at 569 (citing *Drayage*, 69 Cal. 2d 33).

27         Alkar's motion to dismiss ignores *Trident* and the California authority cited above.  Instead, in

28  support of its request for the Court to interpret the parties' agreement now, Alkar cites three

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

unpublished federal decisions which do not even address the rule in California that courts must consider extrinsic evidence in interpreting a contract. *See* Motion at 10. First, Alkar cites *Bedrosian v. Tenet Healthcare Corp. Id. Bedrosian* involved an employee's claim under the Employment Retirement Income Security Act (ERISA) against his former employer for retirement benefits. The Court did not mention California's contract interpretation principles or address at all the need to consider extrinsic evidence. Indeed, it does not appear that the plaintiff objected to the Court conducting its contract interpretation analysis in connection with the defendant's motion. Whatever the plaintiff's arguments, *Bedrosian* did not address the fatal flaw within Alkar's motion and plainly does not trump clear California authority and *Trident* which squarely address the issue.

Alkar also cites *International Ins. Co. v. Red & White Co.* and *Campbell v. Allstate Ins. Co.* to support its argument that the Court can interpret the parties' agreement and subsequent conduct on a motion to dismiss. Motion at 10. Like *Bedrosian*, *Red & White Co.* and *Campbell* do not even mention, let alone address, the California rule that courts are prohibited from interpreting a contract on a motion to dismiss. As such, these unreported cases are not persuasive at all.[2]

The *Drayage* rule defeats Alkar's motion. Foster Farms has alleged that Alkar breached its indemnification obligations by refusing to indemnify Foster Farms for the expense of the Unitherm patent infringement claim. Alkar contends that the terms governing the parties' relationship did not require Alkar to indemnify Foster Farms for a patent infringement claim that arose after delivery of the equipment.

The resolution of the parties' dispute will require a rigorous contract interpretation analysis, including, for example, a factual determination of the parties' intent concerning the warranty language

---

[2] Like *Trident*, other courts have expressed concern with the broad rule that was first articulated in *Drayage*. *See, e.g.*, *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 394-96 (2006) (Baxter, J., concurring); *Banco Do Brasil, S.A. v. Latian, Inc.*, 234 Cal. App. 3d 973, 1008-11 (1991). The rule expressed in *Drayage* and followed in *Trident*, however, remains the law today in California. Moreover, even under the more limited rule that some courts advocate, Alkar's motion still should be denied. The primary concern over *Drayage* has been that the rule allows a party to present contemporaneous oral discussions in support of an interpretation that squarely contradicts perfectly clear language of an integrated document. *Id.* Whatever Alkar may argue, Foster Farms is not attempting to do that here and so the motion to dismiss should be denied even if the rule in California were not as broad as it continues to be today.

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

1  in the Agreement, the intent behind the Hanson Letter, and  the intent behind the patent

2  indemnification terms attached to the Hanson Letter.  *See, e.g.*, Motion at 10-14, 16-18, 20-22.  The

3  law forecloses resolution of these issues at this stage of the proceedings.

4  **B.**     **The Motion Improperly Relies On Facts Outside The Pleadings**

5          In ruling on the motion to dismiss, the Court may only consider those facts that are alleged in

6  the complaint and in any materials that are submitted as part of the complaint.  *Arpin*, 261 F.3d at 925;

7  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990).  Yet,

8  Alkar's motion improperly relies on facts asserted in the brief that are not alleged in the complaint and

9  are not included in any of the complaint's exhibits.

10         For example, Alkar relies on the "fact" that during contract negotiations, the parties exchanged

11  drafts of the purchase agreement and removed from the agreement an indemnification provision, but

12  that "fact" is not alleged anywhere in the complaint and is not evidenced in any of the documents

13  attached to the complaint.  Motion at 3, 11.[3]  Likewise, Alkar contends that the Agreement at issue

14  here was "not a 'standard' Alkar contract," but Alkar does not cite any allegations in the complaint or

15  its exhibits in support of this factual statement.  Motion at 7, 12.  Alkar's reliance on these "facts" is

16  improper and cannot form the basis for its motion to dismiss.

17  **C.**     **The Motion Improperly Asks The Court To Resolve The Parties' Factual Disputes**

18         Alkar also asks the Court to resolve factual disputes between the parties.  It is well-established,

19  however, that courts should not resolve factual disputes on a motion to dismiss.  *Arpin*, 261 F.3d at

20  925; *Daniel*, 288 F.3d at 380.

21         For example, Alkar argues the Court should conclude that Alkar did not breach the terms

22  attached to the Hanson Letter (assuming those terms applied).  Motion at 14.  In support, Alkar has

23

24  [3] The procedurally improper references appear in the very first paragraph of Alkar's motion at lines
6-7.  Alkar further elaborates on the proposition on page 3 of the statement of facts, claiming that the
25  parties exchanged drafts of their Agreement and removed from the Agreement a relevant
indemnification provision.  Motion at 3:24, 11:17-20.  Alkar's first reference to the parties' alleged
26  negotiations appears in the fact section without any citation at all.  *Id*. at 3:24-28.  When Alkar
references this same "fact" later in its motion, it supports the "fact" with a "*see supra*" cite back to its
27  first naked reference on page 3 – a textbook example of bootstrapping.  Of course, if Alkar was entitled
to any relief on its motion, it would not need to introduce facts contained nowhere in the operative
28  pleadings.

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

1   asked the Court (i) to take judicial notice of the Unitherm patent, (ii) to review the patent, (iii) to

2   review the Unitherm lawsuit, (iv) to interpret the terms attached to the Hanson Letter, and (v) to

3   determine that the Unitherm patent and lawsuit are excluded from the scope of Mr. Hanson's

4   assurances.  Alkar literally wants to litigate the entire case on its motion to dismiss.  *Id*.  It cannot do

5   so.

6         Foster Farms disputes Alkar's characterization of the patent and the lawsuit, and that dispute

7   will be the subject of fact and expert testimony.  Foster Farms is not obligated (or even permitted) to

8   set forth its evidence in opposing this motion – its allegations must be taken as true.  Alkar's request

9   that the Court resolve factual disputes between the parties is improper and should be rejected.

10   **IV.    ALKAR'S MOTION TO DISMISS THE BREACH OF CONTRACT CLAIM MUST
        FAIL**

11

12         To allege a breach of contract claim Foster Farms must allege facts that demonstrate (1) the

     existence of a contract, (2) Foster Farms' performance of its contractual obligations; (3) Alkar's

13   breach; and (4) damages to Foster Farms as a result of Alkar's breach.  *CDF Firefighters v.*

14   *Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

15         Foster Farms has properly alleged each of the required elements:

16         (1) A contract existed between the parties that provided an obligation by Alkar to warrant and

17   indemnify against patent infringement.  Complaint at ¶¶ 1, 11-12, 26 and Ex. A.  Specifically, that the

18   contract provided a broad warranty that Alkar's equipment was "free from all liens, encumbrances and

19   claims of others ***of every kind and nature***" and "free from infringement of ***any*** patent."  *Id*. at ¶¶ 1, 13,

20   26-27 (emphasis added).  (2) Foster Farms has performed its contractual obligations, including paying

21   for Alkar's equipment.  *Id*. at ¶¶ 1, 25.  (3) Alkar breached its contractual obligations by refusing to

22   indemnify Foster Farms for the costs it incurred in defending the Unitherm claim.  *Id*. at ¶¶ 4, 22, 29.

23   (4) Foster Farms was damaged by Alkar's breach in incurring over $1.1 million in expenses defending

24   the Unitherm claim that Alkar has refused to reimburse.  *Id*. at ¶¶ 21, 30. [4]

25

26   _____

27   [4] Alkar misconstrues the law and argues that clauses for express indemnity must be "clear and explicit,
     and will be construed strictly against the indemnitee." Motion  at 11.  That rule applies only in cases
     where a party seeks to "be indemnified for its own negligence or regardless of the indemnitor's fault."

28   *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1158 (2009).  That is not the case here.  Foster
     (Continued...)

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

1   The complaint alleges not only that the Agreement explicitly contains warranty provisions that

2   encompass the Unitherm claim and require Alkar to indemnify Foster Farms, but also identifies *some*

3   of the factual evidence which directly supports Foster Farms' position.  Specifically, Foster Farms has

4   shown that Alkar's Vice President confirmed Alkar's obligation to indemnify Foster Farms for the

5   Unitherm claim in this May 2003 letter:

6

7   06/18/2003  08:59  2096685978              FOSTER FARMS R AND D              PAGE  02

                                 2096685978

8   **ALKAR ▪ RAPIDPAK ▪ SANI▪MATIC**

9   ALKAR-RapidPak, Inc. ▪ 932 Development Drive, P.O. Box 260, Lodi, WI 53555 USA ▪ Phone: 608-592-3211 Fax: 608-592-4039

10

11   May 23, 2003

      Tim McConnell
      Foster Farms
      1000 Davis St
      Livingston, CA 95334

12

13   Dear Tim,

     Regarding patent issues on our equipment, Alkar-RapidPak stands behind our products --
14   including Indemnification against patent infringement. Enclosed are the patent Indemnification
     terms that we include in all of our standard contracts.

15   Regarding the use of an Alkar-RapidPak surface pasteurizer as part of a process including pre-
     browning, bagging, post-pasteurization, and cooling of pre-cooked food products, we are aware
     of industry installations in operation since at least as early as 1999 that follow that process.

16   Please keep me informed of any further support that I can give you on this issue.

17   Best regards,

18   Robert Hanson
     Vice President of Research & Technology

19

20   cc:     Tim Moskal; Alkar-RapidPak
             Mike Maki; Alkar-RapidPak

21

22

23   ▪ ALKAR - Cooking & Chilling          ▪ RapidPak - Packaging          ▪ SANI-MATIC - Sanitation
       www.alkar.com                          www.rapidpak.com                www.sanimatic.com

24   RECEIVED TIME  JUN. 10.  12:05PM

25

26   (...Continued)

27   Farms does not seek to be indemnified for its own negligence.  Nor do the allegations in the complaint
     demonstrate that Alkar is without fault.  Foster Farms has alleged Alkar's fault in providing equipment
28   subject to a patent infringement claim.  Complaint at ¶¶ 32-38.

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

1  Complaint at ¶ 13, Ex. B.  The Hanson Letter demonstrates the validity of Foster Farms' claim for

2  breach of contact, as it is well-established that  the conduct of the parties is relevant to the

3  interpretation of its terms.  *S. Ca. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 851 (1995)

4  ("The rule is well settled that in construing the terms of a contract the construction given it by the acts

5  and conduct of the parties with knowledge of its terms, and before any controversy has arisen as to its

6  meaning, is admissible on the issue of the parties' intent").  Nevertheless, because the allegations in the

7  complaint plead a claim for breach of contract, that is where the analysis must stop in deciding Alkar's

8  motion.

9  **V.    THE COMPLAINT PROPERLY ALLEGES CLAIMS FOR BREACH OF EXPRESS**
   **AND IMPLIED WARRANTY**

10

11      **A.    Foster Farms Has Alleged A Claim For Breach Of Express Warranty**

12          To plead a claim for breach of express warranty, a plaintiff must allege facts sufficient to show

13  that (1) the seller's statements constitute an affirmation of fact or promise, or a description of the

14  goods, (2) the statement was part of the basis of the bargain, and (3) the warranty was breached.

15  *Weinstat v. Dentsply Int'l Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); *see also* Cal. U.C.C. § 2313;

16  *Keith v. Buchanan,* 173 Cal. App. 3d 13, 20 (1985).  Foster Farms has alleged each of the required

17  elements:

18          (1) Alkar promised in writing that its equipment was "free from all liens, encumbrances, and

19  claims of others ***of every kind and nature***" and "absolutely free from infringement of ***any*** patent," as

20  confirmed by the Hanson Letter.  Complaint at ¶ 32 (emphasis added), Ex. B.  (2) Alkar's stated

21  obligations became part of the basis of the bargain between Foster Farms and Alkar.  *Id.*  (3) Alkar

22  breached its express warranty by providing Foster Farms equipment that was subject to the claim from

23  Unitherm that the equipment allegedly infringed Unitherm's patent.  *Id.* at ¶ 33.

24          **1.    Alkar's Effort To Require The Court To Interpret The Parties' Contract**
               **Must Fail**

25

26          Like its motion to dismiss Foster Farms' breach of contract claim, Alkar's motion to dismiss

27  Foster Farms' breach of warranty claim improperly asks the Court to interpret the parties' Agreement.

28  *See* Motion at 16-18 (arguing the purchase agreement is "clear on its face").  For the same reasons

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

1   described above, Alkar's motion to dismiss the warranty claim must fail given the law in California

2   that courts must consider extrinsic evidence in interpreting a contract and may not interpret an

3   agreement on a motion to dismiss.

4                    **2.    Alkar's Reliance On The California Commercial Code Is Misplaced**

5            Alkar relies on California Commercial Code Section 2725(2) to argue that its warranty against

6   infringement applies only to claims for patent infringement that existed at the time of delivery.  Motion

7   at 18-19.  Section 2725 provides the statute of limitations for a breach of express warranty claim and in

8   particular provides that the breach of warranty must occur within the warranty period and the action

9   must be commenced within four years of that breach.  Alkar is ***not*** arguing that Foster Farms' breach

10  of warranty claim is time-barred.  Rather, Alkar relies on Section 2725 as further support for its

11  contract interpretation argument that its warranty only covered infringement claims existing at the time

12  it delivered the equipment to Foster Farms.  Alkar is wrong:

13          ***First***, the argument requires the Court to interpret the parties' agreement to determine what the

14  parties agreed would be the "warranty period," so that it can determine whether the breach occurred

15  within the warranty period.  Foster Farms alleged that the warranty provisions extended to the

16  Unitherm infringement claim.  These allegations defeat Alkar's Section 2725 argument, because the

17  law is clear that parties may agree that warranties apply to future infringement claims.  And Alkar may

18  not challenge Foster Farms' alleged interpretation.

19          ***Second***, as Carrier *Corp. v. Detrex Corp*., 4 Cal. App. 4th 1522 (1992), makes clear, Section

20  2725 does ***not*** apply in indemnification cases such as this one.  More specifically, the rule that a breach

21  of warranty occurs at the time of delivery is not applicable in cases of indemnification arising out of a

22  contractual warranty because "[t]here is a substantial difference between an instance where a product

23  simply fails" (*i.e.*, a typical breach of warranty case), and "a situation where the product fails and

24  causes damage to a third party" (*i.e.*, a case where the plaintiff is entitled to indemnification arising out

25  of a contractual warranty).  *Carrier*, 4 Cal. App. 4th at 1529.  In cases for indemnification, therefore,

26  the breach of warranty does not need to occur at the time of delivery.  *Id*. at 1528-29.

27          Equitable principles of indemnification support this rationale:  "it would be illogical, in view of

28  the breadth of the indemnification concept, to deny indemnity where a duty imposed by the law of

1  products liability is breached, while allowing it in all other instances of breach of duty.  No rationale

2  supports that result."  *Id.* at 1528 (citing *McDermott v. City of New York*, 406 N.E.2d 460, 463

3  (1980)).[5]  As such, Section 2725(2) in no way precludes Foster Farms' claim.

4      **Third**, even assuming the Court were to accept Alkar's interpretation of the parties' agreement,

5  there is still a factual dispute as to whether the equipment satisfied the warranties at the time of

6  delivery.  A breach of warranty can occur at the time of delivery even when the event that gives notice

7  of the breach (in this case the filing of a suit for infringement) occurs at a point later in time.  *See, e.g.*,

8  *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 131-32 (2008) (breach of

9  warranty that product will work for "50,000 cycles" occurred at the time of delivery even though the

10  buyer did not discover until later that the product did not work for 50,000 cycles).

11      Foster Farms has alleged that Alkar breached the express warranty "by *providing* to Foster

12  Farms" equipment "subject to the claim from Unitherm that the equipment allegedly infringed"

13  Unitherm's patent, that "Foster Farms in fact did not *receive* goods as warranted" that were free from

14  patent infringement, and that Unitherm "filed a patent infringement case against Foster Farms as a

15  result of Foster Farms' purchase, installation, and/or use" of the equipment supplied by Alkar.

16  Complaint at ¶ 34-35 (emphasis added).   As such, Foster Farms' allegations sufficiently allege the

17  breach of warranty even under Alkar's incorrect interpretation.

18      **B.    Foster Farms Has Alleged A Claim For Implied Warranty**

19      To plead a claim for breach of the implied warranty against infringement, a plaintiff must

20  allege facts showing that (1) the seller is a merchant regularly dealing in goods of the kind, and (2) the

21  goods were not delivered free of the rightful claim of any third person by way of infringement or the

22

23  _____

24  [5] Alkar's reliance on the rule that damages for breach of warranty are to be measured at the time of
delivery is also misplaced because that rule relates to a breach where the damage is the value of the

25  goods, not where the damage is a liability incurred because of the claim of a third party.  *See* Cal. Com.
Code § 2714 (in an action for breach of warranty a buyer is entitled to recover "the difference at the

26  time and place of acceptance between the value of the goods accepted and the value they would have
had if they had been as warranted").  Indeed, unlike breaches of warranty that fall under Section

27  2725(2), the cause of action for indemnity arising from a breach of warranty does not begin to accrue
until the indemnitee has been damaged by incurring expenses as a cause of the breach of warranty.

28  *Carrier*, 4 Cal. App. 4th at 1529.

like.  *See* Cal. U.C.C. § 2312**;** *Pac. Sunwear of Cal., Inc. v. Olaes Enters., Inc.*, 167 Cal. App. 4th 466, 472-73 (2008).

Foster Farms has adequately alleged the required elements:

(1) Alkar "was a merchant regularly dealing in the kind of good purchased by Foster Farms – the Post Pasteurization System."  Complaint at ¶ 40.  (2) The equipment purchased by Foster Farms and delivered by Alkar was subject to a "rightful" claim of infringement by Unitherm because the "purchase, installation, and/or use" of the equipment prompted Unitherm to file a lawsuit against Foster Farms.  *Id.* at ¶ 42.  (3) Alkar breached the implied warranty by providing equipment "the purchase, installation, and/or use of which prompted Unitherm to file a lawsuit against Foster Farms." *Id*.

Alkar argues Unitherm did not have a claim at the time of delivery because, at that time, the Unitherm patent had not issued and there were no pending or threatened claims of infringement. Motion at 5, 19-20.  Alkar provides no support, however, for its proposed rule that only an existing patent or pending claim of infringement at the time of delivery constitutes a "rightful" claim.  Motion at 19-20.

Under the law on implied warranties, it is clear that sellers warrant against potential or prospective claims, not just claims that have already been made at the time of sale.  *Pac. Sunwear*, 167 Cal. App. 4th at 478-80 (2008).  As the court in *Pacific Sunwear* described in detail, public policy strongly favors interpreting the Section 2312(3) warranty to encompass all nonfrivolous claims of infringement.  *Id.* at 477.  In particular, "as between a buyer and a seller who is a merchant regularly dealing in goods of the kind," "the burden of infringement claims is most sensibly placed on the seller who will generally have superior knowledge as to the existence of such claims, and a stronger incentive to seek out and resolve potential infringement claims prior to sale."  *Id*. at 478 (citations omitted). "The seller's incentive to reduce or eliminate prospective claims of infringement is undermined" if the warranty "applies only to meritorious claims, leaving the risk of closely contested, but ultimately unsuccessful, infringement claims to be borne by unsuspecting purchasers."  *Id*.

"In the most common scenario-i.e., the situation best suited to a generally applicable implied warranty-buyers will be unwilling to make a purchase unless assured by the seller that the goods are

not subject to *any* nonfrivolous infringement claims." *Id*.  This is because "[a]verage buyers simply do not anticipate that their title to and use of purchased goods will be contingent upon their successful litigation of a ***subsequent*** infringement action." *Id*. at 478-79 (citations omitted) (emphasis added). "Section 2312(3) best reflects this reality by allowing a buyer to rely on the seller's status as 'a merchant regularly dealing in [the] goods' sold…, as demonstrating that the purchase price represents the ***total*** cost required for a buyer to use the purchased goods" – that is, "that the buyer's ultimate use of the goods does not include a hidden litigation cost." *Id*. at 479 (citations omitted) (emphasis added). "The seller's incentive to reduce or eliminate ***prospective*** claims of infringement is undermined, however, if the section 2312(3) warranty applies only to meritorious claims, leaving the risk of closely contested, but ultimately unsuccessful, infringement claims to be borne by unsuspecting purchasers." *Id*. at 478 (emphasis added).  So, Alkar's contention that implied warranties do not cover post-delivery claims is simply not correct.[6]

Moreover, whether a "rightful claim" covered by the warranty exists is a question of fact that the Court should not decide on a motion to dismiss.  *See*, *e.g.*, *Pac. Sunwear*, 167 Cal. App. 4th at 483 (whether the infringement claim at issue was a "rightful claim" could not be decided as a matter of law); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)"). Foster Farms has sufficiently alleged the facts constituting a claim for breach of implied warranty of infringement, and Alkar's motion to dismiss the breach of implied warranty claim should be denied.

## VI.   THE COMPLAINT ALLEGES A CLAIM FOR EQUITABLE INDEMNITY

Alkar argues that Foster Farms' claim for equitable indemnity (or implied contractual indemnity) should be dismissed based on the general rule that a party seeking equitable indemnity

---

[6] In any event, Foster Farms alleged that the "purchase, installation, and/or use" of Alkar's equipment by Foster Farms prompted Unitherm to file a lawsuit for patent infringement.  In doing so, Foster Farms alleged that at the time of delivery (*i.e.*, at the time of purchase or installation), Unitherm had a colorable claim of infringement related to the equipment.  Complaint at ¶ 42.  The claim is colorable or "rightful" given Unitherm's claim to the technology and eventual filing of a lawsuit for infringement against Foster Farms.  *Id.*  That Unitherm's patent was ultimately forfeited is irrelevant (especially here on a motion to dismiss).  *Pac. Sunwear*, 167 Cal. App. 4th at 478.

1   must prove that the indemnitor is also liable to the injured party.  Motion at 15 (citing *Prince v. Pac.*

2   *Gas & Elec. Co.*, 45 Cal. 4th 1151 (2009)).  Alkar contends that Foster Farms cannot allege joint

3   liability to Unitherm given that the Unitherm patent was determined to be invalid.  Motion at 15.

4   Alkar's reliance on *Prince* is misplaced.

5        The rule in *Prince* does not apply where, as here, the equitable indemnity claim seeks to

6   recover only defense costs relating to the underlying lawsuit in which the indemnitee prevailed.  *See*

7   *Carrier*, 4 Cal. App. 4th 1522 (1992).  Otherwise, the indemnitee would be incentivized (and required)

8   to lose the underlying lawsuit to state a claim for equitable indemnity.  Put another way, under Alkar's

9   proposed rule, a party could not sue for equitable indemnification of defense costs, even where the

10  party suffered those costs as a result of the alleged indemnitor's conduct.  Equitable principles do not

11  support such a strict prohibition against claims for indemnity.

12       In *Carrier*, the Court found the indemnitor liable for costs the indemnitee incurred in clean up

13  and abatement to remedy contamination caused by the indemnitor's equipment.  *Id*. at 1530.  In

14  *Carrier*, no action by a third party was brought, and the indemnitee incurred the costs solely in order to

15  avoid liability (*i.e.*, to defend itself).  *Id.*  As such, no liability to a third party was established.  *Id.*  Yet,

16  the court determined that equity required that the indemnitor reimburse the indemnitee for the costs it

17  incurred.  *Id.*  In doing so, the court concluded that the indemnitee should not be penalized "for taking

18  appropriate preventative measures instead of sitting back and waiting to be sued by its landlord, a

19  neighbor, or a governmental agency." *Id*.

20       Here, Alkar sold Foster Farms the equipment that resulted in the infringement lawsuit; Alkar

21  could have been sued by Unitherm for infringement; and Alkar benefitted substantially from Foster

22  Farms' defense of the action.  Foster Farms should not be penalized for taking appropriate measures to

23  defend the Unitherm claim.  Nor should Foster Farms be expected (or encouraged) to allow a judgment

24  to be entered against it in order to be able to pursue indemnification from Alkar.  Like the indemnitee

25  in *Carrier*, Foster Farms would not have been in the position of defending the Unitherm lawsuit if it

26  were not for the Alkar equipment, and Foster Farms' claim for indemnity should not be precluded

27  simply because it succeeded in defending the Unitherm claim.

28

1    Accordingly, the equitable considerations that underlie claims for equitable indemnity defeat

2    Alkar's motion to dismiss.

3    **VII.   THE COMPLAINT ALLEGES FACTS SATISFYING THE ELEMENTS FOR
         PROMISSORY ESTOPPEL**

4

5    The elements of a claim for promissory estoppel are: (1) a clear promise; (2) reasonable

6    reliance; (3) substantial detriment; and (4) damages.  *Toscano v. Greene Music*, 124 Cal. App. 4th 685,

7    692 (2004).  Foster Farms has alleged all four elements:

8    (1) Alkar promised that it would be influenced to make the indemnification payment (without

9    the need for litigation) if Foster Farms requested and obtained concessions from Unitherm as part of

10   the resolution of that case.  Complaint at ¶53.[7]  (2)  Foster Farms reasonably relied on Alkar's ongoing

11   promises of indemnification and believed the representations to be true.  *Id*. at ¶ 54.  Foster Farms'

12   reasonable reliance is demonstrated by, among other things, its negotiations with Unitherm and

13   decision not to pursue a claim for fees and costs against Unitherm.  *Id*. at ¶¶ 18-21.  (3) Foster Farms

14   incurred a substantial detriment in its reliance on Alkar's promise because it was induced to forego its

15   claim for attorneys' fees against Unitherm.  *Id*. at ¶ 56.  (4)  Foster Farms was damaged by Alkar's

16   failure to indemnify in that it incurred "well over a million dollars in direct expenses in defending

17   against the Unitherm lawsuit, in addition to internal costs and business disruption."  *Id*. at ¶ 57.  Alkar

18   has challenged the allegations with respect to the first two elements.

19   **A.   Foster Farms Has Alleged Alkar Made A Clear Promise**

20   Under the doctrine of promissory estoppel, a promise is enforceable when the promisor should

21   reasonably expect a substantial change of position, either by act or forbearance, in reliance on his

22   promise, if injustice can be avoided only by its enforcement.  *Smith v. City & County of San Francisco*,

23

_____

24   [7] The Hanson Letter provides an independent ground to deny the motion to dismiss in that it is a clear
     promise upon which Foster Farms relied in defending the Unitherm lawsuit and in foregoing its claim

25   for fees and costs against Unitherm.  Foster Farms had no reason to believe that Mr. Hanson, Alkar's
     Vice President, was not acting in good faith or was mistaken given that he wrote the letter with full

26   knowledge of Unitherm's claim.  Complaint at ¶ 13.  Although the promissory estoppel cause of action
     does not expressly rely on the Hanson Letter, the cause of action incorporates by reference Paragraphs

27   1 through 51 of the Complaint, which include numerous allegations relating to the Hanson Letter.
     Complaint at ¶ 52.

28

225 Cal. App. 3d 38, 48 (1990).  In this case, Alkar should reasonably have expected Foster Farms to change its position in negotiations with Unitherm in reliance on Alkar's promise that its voluntary indemnification payment would be influenced by Foster Farms' ability to obtain additional concessions from Unitherm.  *Id*. at ¶ 20.  This included Foster Farms' decision to relinquish its claim for fees and costs against Unitherm.  *Id*.  As Foster Farms has incurred such prejudice in reliance on Alkar's repeated promises, justice can only be served by enforcing Alkar's promises of indemnification.

Alkar, however, still argues that its promise was unclear.  Not so.  Alkar promised that its decision to make a voluntary indemnification payment would be "influenced by Foster Farms' follow-through on [Alkar's] requests for [] additional concessions from Unitherm." *Id*. at ¶¶ 53.  When the promise is viewed in the context in which it was made, it is clear that Alkar was seeking to induce Foster Farms to request and obtain concessions from Unitherm.  Foster Farms did not have any interest in obtaining those concessions other than obtaining the promised indemnification payment without additional delay and expense.  A reasonable person would properly interpret Alkar's promise to mean that if Foster Farms obtained the requested concessions it would receive the indemnification payment.  There is no other rational explanation for what Alkar meant when it said that its indemnification would be influenced by Foster Farms' ability to obtain the requested concessions from Unitherm.

**B.      Foster Farms Has Alleged Its Reasonable Reliance On Alkar's Promise**

As Alkar concedes, when a promise is clear, reliance on that promise is reasonable.  *See Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992); Motion at 22. As set forth above, the promise at issue was clear and thus the reliance element has been alleged.

Foster Farms has alleged that, in obtaining concessions for Alkar and foregoing its claim for attorneys' fees against Unitherm, it relied on the representations made by Alkar's counsel that Alkar's indemnification of Foster Farms would be "influenced" by Foster Farms obtaining those concessions. *Id*. at ¶¶ 20-21.

It was reasonable for Foster Farms to rely on the statements of Alkar's counsel that Alkar's indemnification of Foster Farms would be influenced by whether Foster Farms obtained the concessions Alkar requested.  Complaint at ¶¶ 20-21.  That statement made it clear that, whether Foster Farms would be indemnified voluntarily was dependent on Foster Farms obtaining the concessions.

1  *Id*.  No other reasonable inference could be drawn from the statements made by Alkar, and Foster

2  Farms had no reason to doubt the good faith of its counsel in making the representations.

3  **VIII.   THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT**

4        To plead a cause of action for unjust enrichment, Foster Farms must allege that Alkar (1)

5  received a benefit and (2) unjustly retained that benefit at Foster Farms' expense.  *Lectrodryer v.*

6  *SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  Foster Farms has adequately pled those elements: (1)

7  Alkar unjustly received benefits as the result of Foster Farms' defense on the Unitherm suit, including

8  benefits that Foster Farms secured for Alkar and other Alkar customers which were requested by Alkar

9  and which did not benefit Foster Farms.  Complaint at ¶¶ 59-60.  (2) Alkar has unjustly retained those

10  benefits at Foster Farms' expense by refusing to indemnify Foster Farms for its defense of the

11  Unitherm lawsuit while Alkar has enjoyed, and will continue to enjoy, the benefits it received through

12  Foster Farms' zealous defense of the lawsuit, including Foster Farms' investigation demonstrating that

13  the Unitherm patent at issue was invalid.  *Id*. at ¶¶ 60-61.

14        Alkar's argument that Foster Farms' unjust enrichment claim should be dismissed is circular.

15  In an effort to escape liability for unjust enrichment, Alkar argues that there can be no unjust

16  enrichment when a valid contract covers the same subject matter.  Motion at 22-23.  Oddly, this

17  argument comes only after Alkar dedicates the prior 21 pages to the assertion that Alkar has no

18  warranty or indemnity obligations to Foster Farms.  Obviously the claim is plead in the alternative – a

19  wholly permissible mode of pleading – and should be permitted to stand at this early stage of the

20  proceedings.  *See* Fed. R. Civ. P. 8(d)(2); *Palestini v. Homecomings Fin., LLC*, 2010 U.S. Dist. LEXIS

21  72985 at *12 (S.D. Cal. Jul. 20, 2010) (finding that where breach of contract and unjust

22  enrichment claims were pled together, the defendant's request to dismiss the unjust enrichment claim

23  at the motion to dismiss stage was "premature" since "[i]t is well-settled that plaintiffs are permitted to

24  plead alternative theories of relief").  The issue of the claim's proper nomenclature is non-substantive,

25  remediable, and not worthy of extended argument.

26        Although California Courts of Appeal have reached different decisions on whether unjust

27  enrichment is an independent claim in California, there is ample authority to support the proposition

28  that a plaintiff may, in fact, plead a cause of action for unjust enrichment. *See Hirsch v. Bank of*

1  *America, N.A.*, 107 Cal. App. 4th 708, 722 (2003) (reversing the lower court's dismissal of plaintiff's

2  unjust enrichment claim upon finding that appellants stated a valid cause of action for unjust

3  enrichment); *see also Ghirardo v. Antonioli*, 14 Cal. 4th 39, 43-44 (1996); *Villager Franchise Sys.,*

4  *Inc., v. Dhami, Dhami & Virk*, No. CV-F-04-6393, 2006 U.S. Dist. LEXIS 6114, at *21 (E.D. Cal. Jan.

5  26, 2006) ("California law recognizes a cause of action for unjust enrichment."); *Gerlinger v.*

6  *Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("Under California law, unjust

7  enrichment is an action in quasi-contract") (citing *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d

8  1151, 1167 (9th Cir.1996)); *W. Pac. R. Corp. v. W. Pac. R. Co.*, 206 F.2d 495, 498 (9th Cir.1953) ("It

9  is of course true that the California courts, in common with authorities generally, recognize a cause of

10  action based on unjust enrichment.").

11      The policy in favor of allowing a plaintiff to plead an independent claim for unjust enrichment

12  applies with particular force here.  Alkar not only received the benefit of Foster Farms' defense of the

13  lawsuit (*i.e.*, compiling evidence that a primary competitor's patent was invalid) but also requested and

14  obtained concessions as a result of Foster Farms' agreement not to pursue a claim for fees and costs

15  against Unitherm.  Alkar has not paid a dime for these benefits and is arguing that Foster Farms has no

16  contractual or warranty claims.  Under these circumstances (and at this stage of the proceedings), the

17  unjust enrichment claim should not be dismissed.

18  **IX.    THE MOTION SHOULD BE DENIED IN ITS ENTIRETY BUT IF ANY PART OF**
    **THE MOTION IS GRANTED, THE COURT SHOULD ALLOW LEAVE TO AMEND**
19

20      For the reasons stated above, Alkar's motion should be denied in its entirety.  If the Court

21  determines that any claim is deficient in any manner, however, the Court should grant Foster Farms

22  leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (the

23  policy in favor of permitting amendment is "applied with extreme liberality") (internal quotations

24  omitted); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend shall be freely granted).

25  The liberal policy of granting amendments is especially applicable where, as here, no amendment has

26  previously been permitted.  *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (in

27  deciding whether leave to amend should be granted, Court should look at "whether plaintiff has

28  previously amended his complaint"); *Moore v. Kayport Package Express, Inc.*, 885 F2d 531, 538 (9th

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT

1  Cir. 1989) (One of the factors to be considered in deciding whether to grant leave to amend is whether

2  there have been "repeated failure[s] to cure deficiencies by previous amendments").

3  **X.      CONCLUSION**

4          Prior to Alkar developing its litigation position, Alkar's Vice President represented that Alkar

5  stood behind its products, including indemnification against patent infringement.  In the face of this

6  admission and the other facts alleged in the Complaint, there is no basis to dismiss any of Foster

7  Farms' claims.  The motion to dismiss should be denied in its entirety.

8

9  Dated:  March 21, 2011                               MAYER BROWN LLP

10

11                                                      By:  /s/ *Michael L. Resch*
                                                             Michael L. Resch
12                                                           Attorneys for Plaintiff
                                                             FOSTER POULTRY FARMS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOSTER FARMS' OPPOSITION TO ALKAR-RAPIDPAK-MP'S MOTION TO DISMISS COMPLAINT