1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FOSTER POULTRY FARMS,** ) | 1:11-CV-00030 AWI SMS |
| ) | |
| **Plaintiff,** ) | **ORDER GRANTING** |
| ) | **PLAINTIFF'S MOTION FOR** |
| **v.** ) | **RECONSIDERATION AND** |
| ) | **ORDER GRANTING IN PART** |
| **ALKAR-RAPIDPAK-MP EQUIPMENT,** ) | **AND DENYING IN PART** |
| **INC. and DOES 1-10,** ) | **DEFENDANT'S MOTION TO** |
| ) | **DISMISS** |
| **Defendants.** ) | |
| _____ ) | **[Doc. #36]** |

**INTRODUCTION**

On June 8, 2011, the Court issued an Order Granting Defendant Alkar-Rapidpak-MP
Equipment, Inc.'s ("Alkar") Motion to Dismiss ("Order").  In the Order, the Court, *inter alia*,
dismissed Plaintiff Foster Poultry Farms' ("Foster Farms") first, second and third causes of
action based on the statute of limitations set forth in California Commercial Code § 2725.  On
July 6, 2011, Foster Farms filed a motion for reconsideration of the Court's Order with respect to
the first, second and third causes of action.  For the reasons that follow, Foster Farms' motion
will be granted.

**LEGAL STANDARD**

A motion for reconsideration is appropriate where the district court (1) is presented with
newly discovered evidence, (2) committed clear error or the initial decision was manifestly

unjust, or (3) if there was an intervening change in controlling law.  <u>Sch. Dist. No. 1J,</u>

<u>Multnomah Cnty., Or. v. ACandS, Inc.,</u> 5 F.3d 1255, 1263 (9th Cir. 1993).

<strong>DISCUSSION</strong>

1.    Foster Farms' first, second and third causes of action are timely under California Code of Civil Procedure § 337.

On December 13, 2010, Foster Farms filed a Complaint against Alkar.[1]  In the first,

second, and third causes of action, Foster Farms brought claims for breach of contract, breach of

express warranty, and breach of implied warranty.  In the June 8, 2011 Order, the Court

construed these causes of action as being governed by the statute of limitations set forth in

California Commercial Code § 2725.

California Commercial Code § 2725(1) states that "an action for breach of any contract

for sale must be commenced within four years after the cause of action has accrued."  Cal. Com.

Code § 2725(1).  Under California Commercial Code § 2725(2), a "breach of warranty occurs

when tender of delivery is made, except that where a warranty explicitly extends to future

performance of the goods[.]"  Cal. Com. Code § 2725(2).  Thus, an "exception to the four-year

limitations period applies only when the seller explicitly has agreed to warrant its product for a

defined period of time."  <u>Carrau v. Marvin Lumber and Cedar Co.,</u> 93 Cal. App. 4th 281, 291

(2001).

It appeared to the Court that Foster Farms' first, second and third causes of action were

asserting claims solely for breach of warranty, which would make the claims governed by section

2725.  In the Complaint, Foster Farms alleged that as a result of the breach of contract, breach of

express warranty and breach of implied warranty, Foster Farms incurred damages.[2]  Complaint at

¶¶ 30, 38 and 45.  Within the contract entered into between Alkar and Foster Farms, Alkar

---

[1]    Foster Farms filed the Complaint in Stanislaus County Superior Court.  Alkar removed the case to this Court on January 6, 2011.

[2]    The only contractual provisions cited to within Foster Farms' breach of contract claim were the express warranty provisions.  Complaint at ¶ 26.

2

warranted that all goods delivered are (1) "validly owned by Seller and are delivered to Buyer free from all liens, encumbrances, and claims of others of every kind and nature;" and (2) "are absolutely free from infringement of any patent[.]"  Id. at ¶ 26.  Since the warranty provisions that Foster Farms rely on do not warrant the goods for a defined period of time, the Court concluded that the statute of limitations began to accrue upon delivery on or before June 1, 2002. Foster Farms did not file the present action until December 13, 2010, which was well after the four-year statute of limitations period of section 2725 had expired.  The Court therefore dismissed Plaintiffs' first, second and third causes of action without prejudice and with leave to amend in order to indicate how their claims were timely.  See Order at 4-6, Doc. 32 at 4-6.

Instead of filing an amended complaint, Foster Farms filed the present motion for reconsideration.  In their motion for reconsideration, Foster Farms clarifies that while their causes of action are denominated as breach of contract, breach of express warranty and breach of implied warranty, Foster Farms is actually asserting separate substantive causes of action for indemnity.  Foster Farms relies on Carrier Corp. v. Detrex Corp., 4 Cal. App. 4th 1522 (1992). In Carrier, plaintiff, a manufacturer, sued defendant, the provider of a degreasing system, after plaintiff incurred expenses in taking pollution control measures when the degreasing system leaked solvent.  Id. at 1524-26.  Plaintiff asserted causes of action for breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose, asking for indemnification as well as damages on all three counts.  Id. at 1526.  The trial court dismissed the complaint under section 2725 because the applicable warranty did not warrant the product for a defined period of time and the complaint was filed more than seven years after tender of delivery of the product.  Id. at 1527.

The California Appellate Court disagreed, concluding that an indemnity claim is a separate substantive cause of action, independent of the breach of warranty.  Id.  The court held "that in a case involving indemnification for damages under express or implied warranty based on a sales contract, the traditional time limitations for commencement of actions will prevail over

1  California Uniform Commercial Code section 2725." Id. at 1529.  The court then applied the

2  four-year statute of limitations set forth in California Code of Civil Procedure § 337, which

3  applies to actions based upon written contracts.  Id. at 1530.  The court held that plaintiff's

4  indemnity claim was timely because the claim began accruing when plaintiff suffered loss, which

5  was when plaintiff discovered the pollution and began abatement procedures.  Id.

6        In this case, unlike in Carrier, Foster Farms did not explicitly request indemnification for

7  its breach of contract, breach of express warranty and breach of implied warranty causes of

8  action.  As stated above, Foster Farms alleged in the Complaint that it is seeking compensatory

9  damages as a result of those breaches.  Complaint at ¶¶ 30, 38 and 45.  In addition, in the

10 Complaint's "Prayer" for relief section, Foster Farms does not explicitly request indemnification,

11 but instead requests compensatory damages.  Complaint at 12.  However, Foster Farms does

12 allege in the Complaint that it is requesting Alkar to honor its indemnity obligations.  Id. at ¶ 1

13 and 4.  In addition, in light of Foster Farms' clarification in their motion for reconsideration that

14 they are explicitly asserting causes of action for indemnity in their first, second and third causes

15 of action, the Court reconsiders its prior Order and concludes that section 2725 does not apply to

16 those causes of action.

17       Instead, the Court now applies the four-year statute of limitations period set forth in

18 California Code of Civil Procedure § 337.  Foster Farms' first, second and third causes of action

19 began to accrue when Foster Farms alleges it suffered loss, which was when Alkar refused to pay

20 Foster Farms' expenses in defending against Unitherm's patent infringement action in July 2010.

21 Complaint at ¶ 20.  Plaintiff filed the present action on December 13, 2010, which was within the

22 four-year limitations period of section 337.  Accordingly, Foster Farms' motion for

23 reconsideration is GRANTED.

24
25 2.    Alkar's motion to dismiss Foster Farms' first, second and third causes of action is granted
      in part and denied in part.

26       In light of the Court's conclusion above, the Court will reconsider Alkar's alternative

27
28                                    4

1   arguments brought in its motion to dismiss.  Foster Farms maintains that there is no other basis to

2   grant Alkar's motion to dismiss Foster Farms' first, second and third causes of action.  Motion

3   for reconsideration at 11:3-4, Doc. 36 at 16.  The Court concludes that Alkar's motion to dismiss

4   Foster Farms' first and second cause of action is denied and Alkar's motion to dismiss Foster

5   Farms' third cause of action is granted.

6          A.      Breach of Contract

7          Alkar moves to dismiss Foster Farms' first cause of action for breach of contract, arguing

8   that Foster Farms' breach of contract claim is not supported by the plain language of the purchase

9   agreement.  Motion to dismiss at 10:9, Doc. 10 at 18.

10          In the first cause of action for breach of contract, Foster Farms alleges that Alkar

11   warranted in the written agreement that all goods delivered are (1) "validly owned by Seller and

12   are delivered to Buyer free from all liens, encumbrances, and claims of others of every kind and

13   nature;" and (2) "are absolutely free from infringement of any patent[.]"  Complaint at ¶ 26.

14   Foster Farms alleges that Robert Hanson, Alkar's Vice President, issued a written assurance that

15   Alkar would indemnify Foster Farms for claims arising from the use of Alkar's products.  Id. at ¶

16   ¶ 13, 27.  The assurance letter appended additional contractual language, which Foster Farms

17   alleges enhanced Alkar's indemnity and warranty obligations to Foster Farms.  Id. at ¶ 27.

18   Foster Farms alleges that "[t]aken as a whole, the equipment contract, the assurance letter, and

19   the additional contract language confer virtually iron-clad warranty and indemnity protections in

20   favor of Foster Farms as would normally be expected from a reputable equipment supplier."  Id.

21   Foster Farms alleges that Alkar breached the contract by refusing to pay for Foster Farms'

22   defense costs in the Unitherm patent infringement case.  Id. at ¶ 29.

23          In California, "[a] cause of action for breach of contract requires proof of the following

24   elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance;

25   (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  CDF Firefighters

26   v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).  "Resolution of contractual claims on a

27

28                                                    5

motion to dismiss is proper if the terms of the contract are unambiguous." <u>Monaco v. Bear Sterns Residential Mortg. Corp.</u>, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008).  "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations."  <u>Id.</u> (citing to <u>Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.</u>, 5 Cal. 4th 854 (1993)).  "An ambiguity may appear on the face of an agreement or extrinsic evidence may reveal a latent ambiguity."  <u>Fremont Indem. Co. v. Fremont Gen. Corp.</u>, 148 Cal. App. 4th 97, 114 (2007) (citation omitted).

As noted above, the contract entered into between Foster Farms and Alkar provided:

> By acceptance of this Agreement, Seller warrants to and for the benefit of Buyer . . . (d) that all goods delivered are validly owned by Seller and are delivered to Buyer free from all liens, encumbrances, and claims of others of every kind and nature . . . (f) that all goods delivered are absolutely free from infringement of any patent[.]

Complaint at ¶ 26.  Foster Farms interprets these warranty provisions as requiring Alkar to indemnify Foster Farms for the costs it incurred in defending itself against Unitherm's patent infringement lawsuit.  <u>Opposition</u> at 9:1-5 and 10:1-8, Doc. 22 at 14-15; <u>see</u> <u>also</u> Complaint at ¶¶ 29-30.

As an initial matter, the Court notes that the contractual provisions on which Foster Farms rely on are not on their face reasonably susceptible to Foster Farms' proffered interpretation.  First, it appears that the warranty provisions only apply to claims that existed at the time of delivery.  Alkar warranted that "*all goods delivered* are validly owned by Seller and are *delivered* to Buyer free from all liens, encumbrances, and claims of others of every kind and nature" and "that *all goods delivered* are absolutely free from infringement of any patent."  Complaint at ¶ 26.  Second, even assuming these warranty provisions extend to a claim for patent infringement by a third party after delivery of the goods, the warranty provisions do not contain any language remotely resembling express indemnity provisions.  In fact, the warranty provisions cited to by Foster Farms do not mention indemnity at all.  Third, Foster Farms' interpretation that a breach of these warranty provisions requires Alkar to indemnify Foster Farms appears to be

contradicted by another clause in the contract.  The contract explicitly provides that "Buyer

remedy for *any* breach of warranty hereunder . . . shall be limited to replacement of the product

or refund of the purchase price."[3]  Complaint at Exhibit A, Doc. 23 at 34; see also Trident Center

v. Connecticut General Life Ins. Co., 847 F.2d 564, 566 (9th Cir. 1988) (stating that the "normal

rule of construction, of course, is that courts must interpret contracts, if possible, so as to avoid

internal conflict") (citations omitted).

Nevertheless, Foster Farms argues in their opposition that dismissal of their breach of

contract claim is inappropriate on a motion to dismiss because the Court must consider extrinsic

evidence in order to ascertain the parties' intentions.  Opposition at 4:12-24, Doc. 22 at 9.  Foster

Farms cites to Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33

(1968) and Trident Center v. Connecticut General Life Insurance Co., 847 F.2d 564 (9th Cir.

1988) for this proposition.

In Pacific Gas, the California Supreme Court concluded that a "court determining

whether a contract is ambiguous must first consider extrinsic evidence offered to prove the

parties' mutual intention.  If the court determines that the contract is reasonably susceptible of an

interpretation supported by extrinsic evidence, the court must admit that evidence for purposes of

interpreting the contract."  Fremont Indem. Co., 148 Cal. App. 4th at 114 (citing to Pacific Gas,

69 Cal. 2d at 39-40).  "A court cannot determine based on only the four corners of a document,

without provisionally considering any extrinsic evidence offered by the parties, that the meaning

of the document is clear and unambiguous."  Id. (citing to Pacific Gas, 69 Cal. 2d at 37).  The

California Supreme Court emphasized that a "rule that would limit the determination of the

---

[3]      "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the motion into a Rule 56 motion for summary judgment[.]"  United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  Id. at 908.  In this case, the written agreement entered into between Foster Farms and Alkar was attached to the Complaint and incorporated by reference.  Therefore, the Court takes judicial notice of the written agreement.

meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained." Pacific Gas, 69 Cal. 2d at 37.

In Trident, the Ninth Circuit interpreted the scope of Pacific Gas, stating that "[u]nder Pacific Gas, it matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence." Trident, 847 F.2d at 569. The Ninth Circuit further stated:

> If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity. If that evidence raises the specter of ambiguity where there was none before, the contract language is displaced and the intention of the parties must be divined from self-serving testimony offered by partisan witnesses whose recollection is hazy from passage of time and colored by their conflicting interests.

Id.[4]  Thus, Trident held "that courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous." A. Kemp Fisheries, Inc. v. Castle & Cooke, Inc., 852 F.2d 493, 497 n.2 (9th Cir. 1988).  "The case must proceed beyond the pleadings so that the court may consider the evidence.  If, after considering the evidence, the court determines that the contract is not reasonably susceptible to the interpretation advanced, the parol evidence rule operates to exclude the evidence."  Id.

While Foster Farms does not explicitly make the argument that the contract is ambiguous,

---

[4]      The Court notes that the Ninth Circuit harshly criticized the holding of Pacific Gas: "Pacific Gas casts a long shadow of uncertainty over all transactions negotiated and executed under the law of California.  As this case illustrates, even when the transaction is very sizeable, even if it involves only sophisticated parties, even if it was negotiated with the aid of counsel, even if it results in contract language that is devoid of ambiguity, costly and protracted litigation cannot be avoided if one party has a strong enough motive for challenging the contract. While this rule creates much business for lawyers and an occasional windfall to some clients, it leads only to frustration and delay for most litigants and clogs already overburdened courts." Trident, 847 F.2d at 569.

1    it appears that Foster Farms is contending that it wishes to offer extrinsic evidence that the

2    parties had agreed that (1) the warranty provisions apply to future claims for patent infringement

3    and (2) the warranty provisions require Alkar to indemnify Foster Farms for its costs in

4    defending against claims of patent infringement.  Opposition at 4-7, Doc. 22 at 9-12 (arguing that

5    the Pacific Gas rule defeats Alkar's motion).  The Court must therefore give Foster Farms an

6    opportunity to present extrinsic evidence as to the intention of the parties in drafting the contract.

7    Accordingly, Alkar's motion to dismiss Foster Farms' first cause of action is DENIED.

8              B.        Breach of Express Warranty

9              Alkar moves to dismiss Foster Farms' second cause of action for breach of express

10   warranty, arguing that the warranty provisions on their face and under applicable California

11   Statutory Authority apply to only liens, claims and encumbrances that existed at the time of

12   delivery of the equipment.  Motion to dismiss at 15:7-9, Doc. 10 at 24.

13             To state a claim for breach of express warranty, a plaintiff must allege facts sufficient to

14   show that (1) the seller's statements constitute an affirmation of fact or promise or a description

15   of the goods; (2) the statement was  part of the basis of the bargain; and (3) the warranty was

16   breached.  Weinstat v. Dentsply Intern., Inc., 180 Cal. App. 4th 1213, 1227 (2010).

17             Foster Farms argues that it states a claim for breach of express warranty because it alleges

18   (1) Alkar promised in writing that its equipment was "free from all liens, encumbrances, and

19   claims of every kind and nature" and "absolutely free from infringement of any patent"; (2)

20   Alkar's stated obligations became part of the basis of the bargain between Foster Farms and

21   Alkar and (3) Alkar breached its express warranty by providing Foster Farms equipment that was

22   subject to Unitherm's patent infringement claim.  Opposition at 10:18-23, Doc. 22 at 15;

23   Complaint at ¶¶ 32-33.

24             In light of the Court's conclusion regarding Foster Farms' first cause of action, Alkar's

25   motion to dismiss the second cause of action for breach of express warranty must also be denied.

26   Foster Farms must be given an opportunity present extrinsic evidence in support of its

27

28                                               9

1   interpretation that the warranty provisions apply to future claims of patent infringement and

2   require Alkar to indemnify Foster Farms for costs incurred in defending against claims of patent

3   infringement.

4              C.      Breach of Implied Warranty

5          Alkar moves to dismiss Foster Farms' third cause of action for breach of implied

6   warranty.  Alkar argues that Foster Farms' claim for breach of implied warranty must be

7   dismissed because the goods were not subject to a "rightful claim" at the time of delivery.

8   Motion to dismiss at 19-20, Doc. 10 at 27-28.

9          To state a claim for breach of implied warranty, a plaintiff must allege facts sufficient to

10  demonstrate that the "the seller was a merchant regularly dealing in goods of the kind, the goods

11  were subject to a rightful infringement claim of any third party upon delivery, the buyer did not

12  furnish specifications to the seller, and the parties did not form another agreement."  Phoenix

13  Solutions, Inc. v. Sony Elecs., Inc., 637 F. Supp. 2d 683, 693 (N.D. Cal. 2009); Cal. Com. Code

14  § 2312(3).

15         Foster Farms contends that it has alleged the required elements to state a claim for breach

16  of implied warranty:

17         (1) Alkar "was a merchant regularly dealing in the kind of good purchased by Foster
           Farms-the Post Pasteurization System."  Complaint at ¶ 40.  (2) The equipment purchased
18         by Foster Farms and delivered by Alkar was subject to a "rightful" claim of infringement
           by Unitherm because the "purchase, installation, and/or use" of the equipment prompted
19         Unitherm to file a lawsuit against Foster Farms.  Id. at ¶ 42.  (3) Alkar breached the
           implied warranty by providing equipment "the purchase, installation, and/or use of which
20         prompted Unitherm to file a lawsuit against Foster Farms."  Id.

21  Opposition at 13:4-10, Doc. 22 at 18.

22         In Pacific Sunwear of California, Inc. v. Olaes Enterprises, Inc., 167 Cal. App. 4th

23  466, 470 (2008), on an issue of first impression, a California Appellate Court concluded that a

24  "rightful claim" under section 2312(3) is "not synonymous with a claim that ultimately will

25  prove successful in litigation."  Instead, the court held that a "rightful claim under section

26  2312(3) is a nonfrivolous claim of infringement that has any significant and adverse effect on the

27

28                                              10

1  buyer's ability to make use of the purchased goods." Id.  A "frivolous claim" is a claim that is
2  "totally and completely without merit." Id. at 482.

3       Alkar's primary argument is that there was no "rightful claim" at the time of delivery
4  because the Unitherm patent was not even issued until five years after delivery.  Motion to
5  dismiss at 20:10-11, Doc. 10 at 28; see Phoenix Solutions, 637 F. Supp. 2d at 694 (stating that a
6  breach of warranty claim under section 2-312(3) "requires a rightful infringement claim at the
7  time the goods are delivered").  The Court agrees that Foster Farms has not alleged sufficient
8  facts establishing that Alkar sold the goods to Foster Farms subject to a "rightful claim" of
9  infringement at the time of delivery.

10       In the Complaint, Foster Farms alleges that the written agreement had a guaranteed
11  delivery date of June 1, 2002.  Complaint at Exhibit A.   Foster Farms alleges that the Unitherm
12  patent did not issue until October 23, 2007.  Id. at ¶ 14.  Thus, at the time of the delivery of the
13  goods, Unitherm's patent had not issued yet.

14       As Alkar correctly points out, a claim for patent infringement cannot be maintained until
15  the patent is issued.  See Gayler v. Wilder, 51 U.S. 477, 493 (1850) ("The inventor of a new and
16  useful improvement certainly has no exclusive right to it, until he obtains a patent.  This right is
17  created by the patent, and no suit can be maintained by the inventor against any one for using it
18  before the patent is issued"); Marsh v.Nichols, Shepherd & Co., 128 U.S. 605, 612 ("Until the
19  patent is issued, there is no property right in it; that is, no such right as the inventor can
20  enforce"); Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636-37 (Fed. Cir. 1991),
21  abrogated on other grounds by, Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1370
22  (Fed. Cir. 2004) ("Before a patent issues, and during the pendency of a patent application in the
23  [Patent Trademark Office], the courts have no claims by which to gauge an alleged infringer's
24  conduct").[5]  Therefore, at the time of delivery of the goods, any claim for patent infringement by

---

26     [5]   In addition, the Court notes that only patent owners, assignees, and exclusive
   licensees have standing to bring suit for infringement.  See 35 U.S.C. § 281; 35 U.S.C. § 100;
27  and Sicom Sys. Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 976 (Fed. Cir. 2005).  Thus, at the

28                      11

1  Unitherm would have been frivolous because the patent had not been issued yet.

2       Accordingly, Alkar's motion to dismiss Foster Farms' third cause of action for breach of

3  implied warranty is GRANTED.  Dismissal is without prejudice and with leave to amend.

4                                          **CONCLUSION**

5       IT IS HEREBY ORDERED that:

6       1.    The Court GRANTS Foster Farms' motion for reconsideration and concludes that

7             Foster Farms' first, second and third causes of action are timely;

8       2.    Alkar's motion to dismiss Foster Farms' first cause of action for breach of

9             contract is DENIED;

10      3.    Alkar's motion to dismiss Foster Farms' second cause of action for breach of

11            express warranty is DENIED;

12      4.    Alkar's motion to dismiss Foster Farms' third cause of action for breach of

13            implied warranty is GRANTED without prejudice and with leave to amend; and

14      5.    Pursuant to the parties' stipulation, Foster Farms shall file an amended complaint

15            within ten (10) days of the filing of this order.

16  IT IS SO ORDERED.

17
    Dated:    November 17, 2011          _____
18                                       CHIEF UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26  ─────────────────
    time of delivery of the goods, Unitherm would not have had standing to assert a patent
27  infringement claim.

28                                              12