IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS,<br><br>    Plaintiff,<br><br>    v.<br><br>ALKAR-RAPIDPAK-MP EQUIPMENT, INC. and DOES 1-10,<br><br>    Defendants. | 1:11-CV-00030 AWI SMS<br><br>ORDER ON MOTION TO DISMISS<br><br>(Doc. 49) |

## INTRODUCTION

On December 13, 2010, Plaintiff Foster Poultry Farms ("Foster Farms") filed a Complaint against Defendant Alkar-Rapidpak-MP Equipment, Inc. ("Alkar") in Stanislaus County Superior Court. On January 6, 2011, Alkar removed the action to this Court because the parties are citizens of different states and more than $75,000 is at issue. Foster Farms' original Complaint alleged claims for: (1) breach of contract; (2) breach of express warranty; (3) breach of implied warranty; (4) implied contractual indemnity; (5) promissory estoppel; and (6) unjust enrichment. On June 8, 2011, the Court issued an order granting Alkar's motion to dismiss. See Court's Docket, Doc. No. 32. On July 5, 2011, Foster Farms filed a motion for reconsideration of the Court's order with respect to the first, second, and third causes of action. On November 21, 2011, the Court granted reconsideration, denied Alkar's motion to dismiss the first and

second causes of action, and granted the motion as to the third cause of action without prejudice. On December 1, 2011, Foster Farms filed a First Amended Complaint ("FAC") alleging causes of action for: (1) breach of contract; (2) breach of express warranty; (3) fraud; (4) negligent misrepresentation; (5) breach of contract (May 2003 agreement); and (6) promissory estoppel. Alkar now moves to dismiss the third, fourth, fifth, and sixth causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons that follow, the motion will be granted.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the

---

[1] In light of the Court's prior finding that Foster Farms must be given an opportunity to present extrinsic evidence in support of its original breach of contract and breach of express warranty claims, it appears Alkar will defer seeking dismissal of those claims until the summary judgment stage of this case. See Court's Docket, Doc. No. 49 at 2.

2

complaint are true (even if doubtful in fact). Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## ALLEGED FACTS

In 2002, Foster Farms entered into a written agreement with Alkar to purchase turkey pasteurization equipment (the "2002 Purchase Agreement"). FAC ¶¶ 11-13. The written agreement contained a broad provision wherein Alkar warranted against "all claims of others of any kind," including patent infringement:

> By acceptance of this Agreement, Seller warrants to and for the benefit of Buyer . . . (d) that all goods delivered are validly owned by Seller and are delivered to Buyer free from all liens, encumbrances, and claims of others of every kind and nature . . . (f) that all goods delivered are absolutely free from infringement of any patent[.]

Id. ¶ 14. After Foster Farms paid Alkar in excess of $2.2 million and installed the equipment, Unitherm Food Systems, Inc. ("Unitherm"), one of Alkar's primary competitors, advised Foster Farms of their pending patent that might have application to the Alkar equipment. Id. ¶¶ 2, 15. Foster Farms promptly communicated Unitherm's threat to Alkar. Id. ¶ 15.

On May 23, 2003, Robert Hanson, Alkar's Vice President of Research and Technology,

3

sent a responsive letter to Foster Farms (the "Hanson Letter"). Id. ¶ 16. The Hanson Letter stated:

> Regarding patent issues on our equipment, Alkar-RapidPak stands behind our products – including indemnification against patent infringement. Enclosed are the patent indemnification terms that we include in all of our standard contracts.
>
> Regarding the use of an Alkar-RapidPak surface pasteurizer as part of a process including pre-browning, bagging, post-pasteurization, and cooling of pre-cooked food products, we are aware of industry installations in operation since at least as early as 1999 that follow that process.
>
> Please keep me informed of any further support I can give you on this issue.

Id., Ex. B. The letter appended a three-paragraph indemnification clause, which Foster Farms alleges constitutes either a modification of the 2002 Purchase Agreement, or a post-delivery promise to indemnify against patent infringement. Id. ¶¶ 2, 17, 33. Based upon these assurances, Foster Farms continued production on the food processing line containing Alkar's equipment, continued its business relationship with Alkar, and continued to purchase supplies from Alkar. Id. ¶ 18.

Alkar filed a protest in the U.S. Patent and Trademark Office against Unitherm's pending patent application but, on October 23, 2007, Unitherm's patent issued. Id. ¶ 20. On March 17, 2009, Unitherm sued Foster Farms for patent infringement. Id. ¶ 21. On May 21, 2009, Foster Farms wrote to Alkar to inform it that Unitherm's complaint implicated the warranty provisions of the purchase agreement, contractual obligations to defend against claims of patent infringement, and Alkar's representations in the Hanson Letter that it would indemnify and defend against patent infringement. Id. ¶ 22. In order to facilitate the defense of Unitherm's patent infringement action, Foster Farms and Alkar entered into an "Agreement of Common Interest, Joint Defense, and Tolling Rights" (the "Tolling Agreement") on or about July 10, 2009, which stated in part:

> The Parties further recognize that unresolved issues exist between them relating to certain indemnities for and warranties against patent infringement, and the rights and liabilities appurtenant thereto.

Id. ¶ 23. Foster Farms and its counsel secured a dismissal of Unitherm's lawsuit with prejudice,

4

and obtained other concessions from Unitherm that would protect Foster Farms from any future suits on related technology. Id. ¶¶ 25.  Thereafter, Alkar requested that Foster Farms attempt to obtain further concessions from Unitherm that had no additional benefit to Foster Farms. Id. ¶26. Alkar represented that obtaining these concessions from Unitherm would facilitate its indemnification payment. Id.  Foster Farms approached Unitherm with this proposal, but Unitherm would not agree to these further concessions unless Foster Farms abandoned its demand for attorneys' fees and expenses against Unitherm. Id. ¶ 27.  To benefit Alkar, Foster Farms agreed to drop its claim for attorneys' fees and expenses against Unitherm in exchange for the additional concessions requested by Alkar. Id.

Foster Farms spent approximately $1,128,000 in fees and expenses associated with defending against Unitherm's lawsuit. Id.  To date, Alkar has refused to provide monetary payment to Foster Farms for the fees and expenses incurred in defending the Unitherm lawsuit and in obtaining favorable concessions for Alkar. Id. ¶ 28.

**DISCUSSION**

A.   Judicial Notice

As a preliminary matter, Alkar requests that the Court take judicial notice of three documents not attached to the FAC: (1) the date and contents of the Unitherm Patent; (2) a hearing transcript excerpt from Unitherm Food Systems, Inc. v. Foster Poultry Farms, Inc., Case No. 09-cv-154-CVE-FHM (N.D. Okla.); and (3) a letter dated May 21, 2009 from Randall C. Boyce of Foster Farms to Tim Moskal of Alkar.  Federal Rule of Evidence 201 provides that a court may take judicial notice of a fact that is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Upon request by a party, the Court is required to take judicial notice of such documents if supplied with the necessary information to enable it to do so.  Fed. R. Evid. 201(c)(2).

    1.   The Unitherm Patent

First, Alkar requests judicial notice of Patent No. US 7,285,299 B1, entitled "Surface Pasteurization of Cooked Food Products," which issued on October 23, 2007. See Decl. of Lance Etcheverry, Court's Docket, Doc. No. 49-1 ("Etcheverry Decl."), at Ex. 1. Courts routinely take judicial notice of patent filing dates. See Pollution Denim & Co. v. Pollution Clothing Co., 547 F. Supp. 2d 1132, 1135 n.11 (C.D. Cal. 2007); eCash Techs., Inc. v. Guagliardo, 210 F. Supp. 2d 1138, 1146 (C.D. Cal. 2000), aff'd 35 Fed. App'x 498 (9th Cir. 2002). Court have also found the contents of patents to be the appropriate subject of judicial notice because patents are documents issued by the U.S. Patent and Trademark Office, a source whose accuracy cannot be reasonably questioned. See St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 154 (E.D.N.Y. 2010); Hay & Forage Indus. v. New Holland N. Am., Inc., 25 F. Supp. 2d 1170, 1175 n.2 (D. Kan. 1998). Foster Farms, moreover, makes reference to the Unitherm Patent in Paragraph 20 of the FAC. "In a motion to dismiss, a Court may take judicial notice of documents attached to or referenced in the complaint without converting the motion into one for summary judgment where the authenticity of the documents are not in dispute." In re Wet Seal, Inc. Securities Litig., 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007); see also Helm v. Alderwoods Group, Inc., 696 F. Supp. 2d 1057, 1072 (N.D. Cal. 2009) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)). Thus, the Court takes judicial notice of the Unitherm Patent.

        2.        Hearing Transcript

Alkar also seeks judicial notice of a "true and correct copy of pages 1-3 and 28-32 of a hearing transcript of proceedings in Unitherm Food Systems, Inc. v. Foster Poultry Farms, Inc., Case No. 09-cv-154 CVE-FHM (N.D. Okla.), dated April 6, 2010." See Etcheverry Decl. Courts routinely take judicial notice of publicly available records, including hearing transcripts, from other court proceedings. See Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist., 498 F. 3d 1031, 1039 n.2 (9th Cir. 2007); Helm, 696 F. Supp. 2d at 1062 n.1. Foster Farms concedes that the Court may judicially notice court filings and other documents in order to notice the existence of the document, but not for the truth of the facts asserted in the documents. See

6

Court's Docket, Doc. No. 52 at 2.  The Court will take judicial notice of the hearing transcript excerpts.  The Court agrees, however, that it may not "take judicial notice of one party's opinion of how a matter of public record should be interpreted."  United States v. So. California Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).

### 3. The Randall C. Boyce Letter

Finally, Alkar requests judicial notice of a "true and correct copy of a letter from Randall C. Boyce, Senior Vice President and General Counsel at Foster Poultry Farms, Inc., to Tim Moskal at Alkar-RapidPak Equipment, Inc., dated May 21, 2009" (the "Boyce Letter").  Foster Farms makes reference to this letter at Paragraph 22 of the FAC.  "A district court may consider material that is 'properly submitted as part of the complaint'; or, if the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity is not contested and the plaintiff's complaint necessarily relies on them.'"  Helm, 696 F. Supp. 2d. at 1072 (N.D. Cal. 2009). "Documents crucial to the plaintiff's claims but not explicitly incorporated in a complaint can be noticed in order to prevent a plaintiff from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."  In re Wet Seal, Inc., 518 F. Supp. 2d at 1158 (quoting Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003)).  Foster Farms does not contest the authenticity of the Boyce Letter, and the FAC relies on the letter.  The Court therefore will take judicial notice of the Boyce Letter.

### B. Fraud

In addition to its original breach of contract and breach of express warranty claims, Foster Farms brings a claim for fraud.  FAC ¶¶ 45-54.  To state a fraud claim under California law, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damages."  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974, 938 P.2d

7

903 (Cal. 1997)); see also Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1104 (9th Cir. 2003). Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud." The Rule 9(b) particularity standard requires "an account of the time, place, and specific content of the false representation, as well as the identities of the parties to the misrepresentations." Swartz v. KPMG, 476 F.3d 756, 763 (9th Cir. 2007). The purpose of this heightened pleading standard is to protect defendants from the "reputational harm" associated with fraud allegations. See Vess, 317 F.3d at 1104.

Alkar makes two main arguments with respect to Foster Farms' fraud claim: that Foster Farms has failed to state a claim for relief because (1) it cannot satisfy the heightened pleading requirements for fraud claims; and (2) the economic loss rule precludes the fraud claim. Because the Court finds that Foster Farms' fraud claim is barred by the economic loss rule, it does not reach Alkar's other arguments with respect to the fraud claim.

Under California law, the economic loss doctrine "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal .4th 979, 988, 102 P.3d 268, 272 (Cal. 2004). To that end, the economic loss rule prohibits the recovery of tort damages in a breach of contract case. See Oracle USA, Inc. v. XL Global Services, Inc., No. C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D.Cal. July 13, 2009) (citing Butler-Rupp v. Lourdeaux, 134 Cal.App.4th 1220, 36 Cal.Rptr.3d 685 (2005)). "Quite simply, the economic loss rule 'prevents the law of contract and the law of tort from dissolving one into the other.'" Id. (quoting Rich Products Corp. v. Kemutec, Inc., 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999)). Courts have applied the economic loss rule to bar fraud claims where "the damages plaintiffs seek are the same economic losses arising from the alleged breach of contract." Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc., 629 F. Supp. 2d 1135, 1146 (E.D.Cal. 2009); see also Alvarado Orthopedic Research, L.P. v. Linvatec Corp., No. 11-CV-246-IEG (RBB), 2011 WL 3703192, at *3 (S.D.Cal. Aug. 23, 2011). In such cases,

8

permitting a fraud claim to proceed "would 'open the door to tort claims in virtually every case in which a party promised to make payments under a contract but failed to do so.'" Id. (quoting Intelligraphics, Inc. v. Marvell Semiconductor, Inc., No. C07-02499 JCS, 2009 WL 330259, at *17 (N.D.Cal. Feb. 10, 2009)).

Foster Farms' fraud claim is based on the same factual allegations as its breach of contract claims, both for the January 2002 agreement and the Hanson Letter.  Foster Farms alleges Alkar breached the contracts by refusing to pay for Foster Farms' defense costs incurred in litigating the Unitherm patent infringement case.  See FAC ¶¶ 35, 69.  Similarly, in its fraud claim, Foster Farms alleges: "Through Mr. Hanson's May 2003 letter, Alkar represented to Foster Farms that it would be indemnified for its defense of the Unitherm lawsuit . . . The representations made by Alkar were in fact false as evidenced by among other things Alkar's refusal to indemnify Foster Farms for the expenses it incurred in defending the Unitherm lawsuit," Id. ¶¶ 47, 52.  For all three claims, Foster Farms seeks indemnification[2] for the expenses it incurred in defending the Unitherm lawsuit. Id. ¶¶ 36, 54, 70.  Thus, Alkar argues, Foster Farms' fraud claim is barred by the economic loss rule.

Foster Farms maintains that the economic loss rule does not apply when conduct amounting to breach of contract also violates a duty independent of the contract, such as where a party commits fraud in the inducement of the contract.  The Court agrees.  Under California law, to maintain a fraud claim based on the same factual allegations as a breach of contract claim, a plaintiff must show that "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." Robinson Helicopter, 34 Cal.4th at 989-90, 102 P.3d at 273.  (quoting Erlich v. Menezes, 21 Cal. 4th 543, 552, 981 P.2d 978 (Cal. 1999)).  As Foster Farms notes, this exception to the economic loss rule

---

[2] Foster Farms also seeks "disgorgement of Alkar's ill-gotten profits from purchases Foster Farms made from Alkar in reliance on Alkar's misrepresentations" based on the fraud claim.  FAC ¶ 54.  This does not distinguish the fraud claim from the Hanson Letter breach of contract claim, which also alleges Foster Farms "made further purchases from Alkar." Id. ¶ 67.

9

is consistent with traditional principles governing fraudulent inducement. See Lazar v. Superior Ct., 12 Cal. 4th 631, 645 (Cal. 1996) ("It has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for the fraud.") Id.

To state a claim for fraudulent inducement under California law, a plaintiff must allege that "the promisor knows what he is signing, but his consent is induced by fraud, mutual assent is present, and a contract is formed, which, by reason of fraud, is voidable." Duffens v. Valenti, 161 Cal. App. 4th 434, 449 (Cal. App. 2008) (quoting Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394, 416, 926 P.2d 1061, 1073 (Cal. 1996)).  Pursuant to the fraudulent inducement exception, courts have declined to apply the economic loss rule in cases where a false statement causes a party to enter a contract.  In Frye v. Wine Library, Inc., cited by the parties, the plaintiff alleged that "Defendants sold Plaintiff a number of very expensive bottles of wine after representing to Plaintiff that the bottles contained very rare, fine wines and knowing that Plaintiff would likely try to resell the wines at auction." Frye v. Wine Library, Inc., No. 06-5399 SC, 2006 WL 3500605, *2 (N.D.Cal. Dec. 4, 2006).  Similarly, the parties cite Krzyzanowsky v. Orkin Exterminating Co., Inc., in which the plaintiffs alleged that a pest control company made misleading statements regarding the nature and effect of its termite extermination services, which induced them enter into a contract with the company. See Krzyzanowsky v. Orkin Exterminating Co., Inc., No. C 07-05362 SBA, 2009 WL 481267, at *11 (N.D.Cal. Feb. 24, 2009).

Foster Farms argues it has stated a claim for fraudulent inducement, and therefore its fraud claim is not barred by the economic loss rule, because "Alkar made the Hanson misrepresentations to induce Foster Farms to continue, among other things, to be an Alkar customer, not to file claims against Alkar, and to defend the Unitherm claims." FAC ¶ 49. However, unlike the plaintiffs in Frye and Krzyzanowsky, Foster Farms has not alleged that the statements in the Hanson Letter induced it to enter into any contract.  Alkar sent the Hanson

10

Letter after Foster Farms signed the 2002 purchase agreement for the post-pasteurization equipment. Thus, the Hanson Letter could not have induced Foster Farms to enter into the 2002 contract.

The only other alleged contract[3] is the Hanson Letter itself, which Foster Farms alleges constitutes either "(a) a piece of extrinsic evidence that supports Alkar's duty to indemnify under the 2002 agreement; (b) a modification[4] of the 2002 agreement; or (c) a stand-alone contract." See Court's Docket, Doc. No. 51 at 29. Thus, Alkar argues, under Foster Farms' fraudulent inducement theory, the misrepresentation that forms the basis of the fraud claim is the contract itself. Courts have held such fraud claims are barred by the economic loss doctrine.

In Oracle USA, Inc. v. XL Global Servs., Inc., the parties entered into a series of agreements through which Oracle licensed software to the defendant and provided related consulting services. See Oracle, No. C 09-00537 MHP, 2009 WL 2084154 (N.D.Cal. Jul. 13, 2009). Oracle alleged the defendant requested that Oracle continue providing services beyond the end date of the contract, and promised to pay all outstanding invoices for consulting services. Id. at *2. Oracle sued for breach of contract and fraud when the defendant refused to pay over $540,000 in service costs. Id. Oracle alleged the defendant made the false promise to pay the

---

[3] Although Foster Farms does not explicitly argue that the alleged misrepresentations in the Hanson Letter induced it to enter into the Tolling Agreement, it does contend that "if Foster Farms had known the Hanson representations were false, it would have filed claims against Alkar, would not have entered into the Tolling Agreement, and certainly would not have defended the Unitherm lawsuit and agreed to forego its right to claim defense costs from Unitherm." Court's Docket, Doc. No. 51 at 14. This argument is belied by the plain language of the Tolling Agreement, which provides that:

> The Parties further recognize that unresolved issues exist between them relating to certain indemnities for and/or warranties against patent infringement, and the rights and liabilities appurtenant thereto.

FAC ¶ 23.

[4] The Court notes the FAC adequately sets forth the contract modification theory with respect to the first cause of action for breach of contract (January 2002 agreement). Foster Farms need not allege a separate cause of action regarding modification.

11

outstanding invoices with the intention of inducing Oracle to provide free additional consulting services.  Id.  Citing the economic loss rule, the district court barred Oracle's fraud claim because Oracle had alleged the statements regarding additional services constituted a separate contract or agreement.  See id. at *4.  The district court found that "[t]here is no conduct at issue which is independent from the various promises made by the parties in the course of their contractual relationship."  Id.

Foster Farms contends Oracle is distinguishable because Oracle did not raise, and the court did not analyze, a fraudulent inducement claim.  This is inapposite.  Regardless of the language used, the Oracle court made clear that where the alleged misrepresentation was also alleged to be a stand-alone contract, the plaintiff's fraud claims were barred by the economic loss doctrine.  Foster Farms' other attempts to distinguish Oracle also are unavailing. Like the plaintiff in Oracle, Foster Farms is seeking relief for "essentially a fraudulent or bad faith breach of an existing contractual obligation."  Court's Docket, Doc. No. 51 at 19.  Foster Farms also argues that, unlike Oracle, it could not "rationally calculate the possibility of breach" because it did not know that Foster Farms would refuse to pay for defense costs at the time Alkar made the misrepresentations.  See id. at 20.  This is a distinction without a difference.  As the Oracle court noted: "Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations . . . To allow [fraud] claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law."  Oracle, 2009 WL 2084154 at *7.  That rationale also holds true here.

Similarly, in Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc., the plaintiffs alleged that they entered into an oral contract to serve as the exclusive insurance broker for the defendant.  See Multifamily Captive Group, LLC, 629 F.Supp.2d 1135, 1146 (E.D. Cal. 2009).  Plaintiffs brought a fraud claim based on 1) the defendant's initial promise associated with the alleged oral contract; and 2) the defendant's subsequent assurances as to the existence of the exclusive relationship.  The court found that the fraud claims were barred by the economic

12

loss rule because the damages sought were the same as those arising from the defendant's alleged breach of agreement. Id. at 1146. In reaching its decision, the court observed: "To allow a fraud claim under these facts would 'open the door to tort claims in virtually every case in which a party promised to make payments under a contract but failed to do so.'" Id. (quoting Intelligraphics, Inc. v. Marvell Semiconductor, Inc., No. C07-02499 JCS, 2009 WL 330259, at *17 (N.D.Cal. Feb. 10, 2009)).

The Court finds that Foster Farms has failed to state a fraud claim for the same reasons. If the Hanson Letter is a separate contract or agreement, the alleged misrepresentations contained therein cannot form the basis for a fraudulent inducement claim. Alternatively, even if the Hanson Letter is an assurance or modification of the 2002 Purchase Agreement, the damages sought by Foster Farms' fraud claim are the same as those arising from the alleged breach of contract, namely indemnification for the expenses incurred in defending the Unitherm suit and compensation for continuing its business relationship with Alkar. For these reasons, the fraud claim is barred by the economic loss rule. Accordingly, Alkar's motion to dismiss Foster Farms' third cause of action for fraud is GRANTED.

C.   Negligent Misrepresentation

Under California law, a negligent misrepresentation claim is comprised of the same elements as a claim for fraud: "1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal.App.4th 226, 243, 70 Cal.Rptr.3d 199, 213 (Cal. App. 2007). Negligent misrepresentation does not require knowledge of falsity. Id. Where the alleged misrepresentation is based on a broken promise of future action, however, "a plaintiff must allege and prove that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." Tarmann v. State Farm Mut. Auto. Ins. Co., 2

13

Cal.App.4th 153, 158-59 (Cal. App. 1991). Framed this way, "an action based on a false promise is simply a type of <u>intentional</u> misrepresentation, i.e., actual fraud." <u>Id.</u>; see also <u>Las Palmas Associates v. Las Palmas Center Associates</u>, 235 Cal.App.3d 1220, 1238 (Cal. App. 1991) ("A promise to do something necessarily implies the <u>intention to perform</u>, and, where such an intention is absent, there is an implied misrepresentation of fact, which is actionable fraud.") As a result, "any claim for the intermediate tort of negligent misrepresentation is also barred" where a related fraud claim is barred by the economic loss rule. <u>Astrium S.A.S. v. TRW, Inc.</u>, 197 Fed. Appx. 575, 577 (9th Cir. 2006).

Foster Farms contends Alkar misrepresented an existing fact because the Hanson Letter was a statement conveying Alkar's existing policies with respect to indemnification against patent infringement. The Court is not persuaded by this characterization. At bottom, Foster Farms is alleging that Alkar breached a promise to indemnify Foster Farms in the future. Because Foster Farms' fraud claim is barred by the economic loss rule, its negligent misrepresentation claim also fails. Accordingly, Alkar's motion to dismiss Foster Farms' fourth cause of action for negligent misrepresentation is GRANTED.

### D.   Breach of Contract (The Hanson Letter)

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." <u>CDF Firefighters v. Maldonado</u>, 158 Cal. App. 4th 1226, 1239 (Cal. App. 2008). Alkar contends Foster Farms' second breach of contract claim, based on the Hanson Letter, fails because Foster Farms has not alleged facts sufficient to demonstrate the existence of a contract. To prove the existence of a contract under California law, a plaintiff must demonstrate: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. <u>See</u> Cal. Civ. Code § 1550. "An essential element of any contract is the consent of the parties, or mutual assent." Lopez v. Charles Schwab & Co., Inc., 118 Cal. App. 4th 1224, 1230 (Cal. App. 2004). In other words, the

14

parties must "all agree upon the same thing in the same sense." Cal. Civ. Code § 1580; Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 209 (Cal. App. 2006). Under California law, contracts are either express or implied. Cal. Civ. Code § 1619. Mutual assent is required for either type of contract. See Yari v. Producers Guild of Am., Inc., 161 Cal. App. 4th 172, 182 (Cal. App. 2008). The existence of mutual assent is determined based on an objective standard. See Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 811 (Cal. App. 1998).

Alkar contends that Foster Farms has not alleged facts demonstrating the required mutual assent. Foster Farms alleges that, in May 2003, it forwarded to Alkar a letter from Unitherm "stating that Unitherm was seeking a patent for technology arguably incorporated in the Alkar Post Pasteurization system and asking Foster Farms to discuss licensing the technology." FAC ¶ 64. Alkar responded with the Hanson Letter, stating:

> Alkar-RapidPak stands behind our products – including indemnification against patent infringement. Enclosed are the patent indemnification terms that we include in all of our standard contracts.

FAC ¶ 16. Foster Farms maintains the contract terms attached to the Hanson Letter constituted an agreement for Alkar to defend the Unitherm patent infringement lawsuit against Foster Farms. Id. ¶ 66. On its face, the Court finds the FAC does not contain facts demonstrating the existence of an express contract. Setting aside Alkar's argument that the indemnification terms would not cover the Unitherm patent at issue, the Hanson Letter was sent on May 23, 2003 - more than four years before the Unitherm patent issued, and almost six years before Unitherm filed suit. Foster Farms does not allege that it responded to the Hanson Letter, or otherwise expressed consent to the alleged terms of the contract.

The parties' prior course of conduct does not suggest mutual assent sufficient to render the Hanson Letter an implied contract. The 2002 Purchase Agreement, for example, evidenced mutual assent through a signed writing executed by the presidents of both Alkar and Foster Farms. Foster Farms has not identified any other prior conduct that suggests the parties would have intended to enter into a contract based on a single letter from an Alkar official. Foster

15

Farms alleges that, pursuant to the terms of the alleged contract, it "continued to use Alkar's equipment, continued its business relationship with Alkar, made further purchases from Alkar, and defended the Unitherm lawsuit to Alkar's benefit." FAC ¶ 67. The FAC, however, is devoid of facts tending to show that these were actions taken in exchange for the alleged promises in the Hanson Letter, as opposed to obligations under the 2002 Purchase Agreement, or simply business decisions. The Court finds that Foster Farms has not alleged the existence of a contract with respect to the Hanson Letter. Accordingly, Alkar's motion to dismiss Foster Farms' fifth cause of action for breach of contract (May 23, 2003 agreement) is GRANTED.

### E. Promissory Estoppel

Under California law, a cause of action for promissory estoppel requires that plaintiff show "(1) a clear promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the obligation assumed and not performed.'" Poway Royal Mobilehome Owners Ass'n v. City of Poway, 149 Cal. App. 4th 1460, 1471 (2007) (quoting Toscano v. Greene Music, 124 Cal. App. 4th 685, 692 (Cal. App. 2004)). Under this doctrine, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth., 23 Cal. 4th 305, 310 (2000).

"[A] promise is an indispensable element of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice." Div. of Labor Law Enforcement v. Transpacific Transp. Co., 69 Cal. App. 3d 268, 277 (1977). The promise must be "clear and unambiguous in its terms." Laks v. Coast Fed. Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (1976). "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of

damages." Garcia v. World Sav., FSB, 183 Cal. App. 4th 1031, 1056 (2010) (internal quotation marks, brackets and citations omitted). "[A] promise that is vague, general or of indeterminate application is not enforceable." Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 446 (9th Cir. 1992) (internal quotation marks and citation omitted).

In the sixth cause of action, Foster Farms characterizes the 2003 Hanson Letter as a "post-delivery promise by Alkar to defend any lawsuit for patent infringement brought by Unitherm relating to Alkar's Post Pateurization System and to indemnify Foster Farms against any such lawsuit." FAC ¶ 74. Viewing the facts in the light most favorable to the non-moving party, Foster Farms has alleged a clear and unambiguous promise by Alkar. The Hanson Letter stated clearly stated that "Alkar-RapidPak stands behind our products – including indemnification against patent infringement. Enclosed are the patent indemnification terms that we include in all of our standard contracts." The attached terms then set forth the specific limitations on the patent indemnification. The question of whether those limitations excluded the Unitherm patent is a factual dispute that cannot be resolved at this stage. For purposes of the motion to dismiss, the Court accepts as true Foster Farms' allegation that the patent indemnification terms did not exclude the Unitherm patent.

With respect to the second element of promissory estoppel, it is well-established that "reliance must be reasonable to set up an estoppel." Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 317 (9th Cir. 1996). Foster Farms alleges it relied on the promise in the Hanson Letter, and as a result it incurred expenses in defending against the Unitherm lawsuit. FAC ¶ 76. It is clear from the face of the FAC, however, that six years elapsed between the Hanson Letter and the filing of the Unitherm lawsuit. Id. ¶¶ 15, 21. The July 2009 Tolling Agreement, entered into shortly after the filing of Unitherm lawsuit, expressly acknowledged that the parties disagreed about the rights and liabilities relating to patent indemnification. Thus, any reliance on the alleged promise in the Hanson Letter was unreasonable with respect to the Unitherm lawsuit. Foster Farms contends that in July 2010, Alkar perpetuated Foster Farms' reliance on the Hanson

Letter by requesting that Foster Farms secure additional concessions from Unitherm for Alkar's benefit. Foster Farms alleges Alkar led it to believe that "Alkar's prompt and complete indemnification would be influenced by Foster Farms' follow-through on its requests for these additional concessions." Id. ¶ 77. As the Court noted in its prior Order, the alleged 2010 statements are too vague to support a claim for promissory estoppel. In light of the Tolling Agreement, any reliance on those statements was manifestly unreasonable. Therefore, Foster Farms has failed to state a claim for promissory estoppel with respect to the Hanson Letter. Accordingly, Alkar's Motion to Dismiss Foster Farms' sixth cause of action for promissory estoppel is GRANTED.

Foster Farms seeks leave to amend its fraud, negligent misrepresentation, breach of contract, and promissory estoppel claims because they were brought for the first time in the FAC so there has been no opportunity to amend them. The Court finds, however, that Foster Farms added no new facts or evidence in the FAC to support these claims. Leave to amend is properly denied "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). The Court therefore finds that amendment would be futile and Foster Farms' third, fourth, fifth, and sixth causes of action are dismissed with prejudice.

**CONCLUSION AND ORDER**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's Third, Fourth, Fifth and Sixth Causes of Action in the First Amended Complaint is GRANTED with prejudice consistent with this order.

IT IS SO ORDERED.

Dated:  April 10, 2012

CHIEF UNITED STATES DISTRICT JUDGE

18