# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS, | CASE NO. 1:11-cv-00030-AWI-SMS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT |
| ALKAR-RAPIDPAK-MP EQUIPMENT, INC., et al., | |
| Defendants. | (Doc. 64) |

On August 13, 2012, Plaintiff Foster Poultry Farms moved for leave to amend its complaint to allege additional claims for promissory estoppel, breach of contract, and fraud. Defendant Alkar-Rapidpak-MP Equipment opposes the motion, contending that the motion is untimely, futile, and prejudicial. Following its review of the complete record and applicable law, the Court denies Plaintiff's motion.

## I.  Factual Background

According to the first amended complaint, in January 2002, Plaintiff, a producer of poultry products, and Defendant, a manufacturer of equipment and systems for cooking, chilling, and pasteurizing poultry and meat products, entered into a written agreement for Plaintiff's

1

purchase from Defendant of equipment to pasteurize pre-cooked turkey products.  (A copy of the agreement was appended to and incorporated by reference into the first amended complaint.) The equipment, and its delivery and installation by Defendant, cost in excess of $2.2 million. The agreement included a broad provision by which Defendant warranted the equipment against "all claims of others of any kind," including patent infringement:

> By acceptance of the Agreement, Seller warrants to and for the benefit of Buyer . . . (d) that all goods delivered are validly owned by Seller and are delivered to Buyer free from all liens, encumbrances, and claims of others of every kind and nature . . . (f) that all goods delivered are absolutely free from infringement of any patent.

Doc. 45-1 at 20, ¶ 18.

Following installation of the system, Unitherm Food Systems, Inc., a competitor of Defendant, notified Plaintiff of a pending patent that might have application to the equipment. (Plaintiff had considered Unitherm's equipment before electing to purchase equipment from Defendant.)  Plaintiff advised Defendant of the threat.  On May 23, 2003, Robert Hanson, Defendant's vice-president of research and technology, wrote:

> Regarding patent issues on our equipment, Alkar-RapidPak stands behind our products–including indemnification against patent infringement.  Enclosed are the patent indemnification terms that we include in all of our standard contracts.
>
> Regarding the use of an Alkar-RapidPak surface pasteurizer as part of a process including pre-browning, bagging post-pasteurization, and cooling of pre-cooked food products, we are aware of industry installations in operation since at least as early as 1999 that follow that process.

Doc. 45-1 at 25.

Hanson attached the following provision:

14. PATENTS, TRADEMARKS AND COPYRIGHTS.   Seller will, at its own expense, defend any suits instituted by anyone against Buyer for alleged

2

infringement of any United States patent, trademark or copyright relating to any products manufactured and furnished by Seller hereunder, if such alleged infringement consists of the use of such products, or parts thereof, in Buyer's business and provided Buyer shall have made all payments then due hereunder, shall have given the Seller immediate notice in writing of any such suit, transmitted to Seller immediately upon receipt of all processes and papers served upon buyer, permitted Seller through its counsel, either in the name of Buyer or in the name of Seller, to defend the same and shall have given all needed information, assistance and authority to enable Seller to do so.  If such products are in such suit held in and of themselves to infringe any valid United States patent, trademark or copyright, then: (a) Seller will pay any final award of damages in such suit attributable to such infringement, and (b) if in such suit use of such products by Buyer is permanently enjoined by reason of such infringement, Seller shall, at its own expense and at its sole option, either (i) procure for Buyer the right to continue using the products, (ii) modify the products to render them non-infringing, (iii) replace the products with non-infringing goods, or (iv) refund the purchase price and the transportation costs paid by Buyer for the products.

Notwithstanding the foregoing, Seller shall not be responsible for any compromise or settlement made without its written consent, or for infringements of combination or process patents covering the use of the products in combination with other goods or materials not furnished by the Seller.  The foregoing states the entire liability of Seller for infringement, and in no event shall Seller be liable for consequential damages attributable to an infringement.

As to any products furnished by Seller to Buyer manufactured in accordance with drawings, designs or specifications proposed or furnished by Buyer or any claim of contributory infringement resulting from use or resale by Buyer of products sold hereunder, Seller shall not be liable, and Buyer shall indemnify Seller and hold Seller harmless from and against any and all loss,  liability, damage, claim or expense (including but not limited to Seller's reasonable attorneys' fees and other costs of defense) incurred by Seller as a result of any claim of patent, trademark, copyright, or trade-secret infringements, or infringements of any other proprietary rights of third parties.

IN NO EVENT SHALL SELLER BE LIABLE FOR CONSEQUENTIAL DAMAGES ATTRIBUTABLE TO ANY INFRINGEMENT.

Doc. 45-1 at 26.

///

3

This language does not appear in the contract between Plaintiff and Defendant appended as Exhibit A to the first amended complaint.  Following receipt of Hanson's letter, Plaintiff continued to produce food using Defendant's equipment.  Unitherm's patent issued on October 23, 2007.

On March 17, 2009, Unitherm filed suit against Plaintiff in the U.S. District Court for the Northern District of Oklahoma, alleging that the equipment infringed on its patent (U.S. Patent No. 7,285,299: sometimes referred to as the "299 patent").  *Unitherm Food Systems, Inc. v. Foster Poultry Farms, Inc.*, Case No. 4:09-cv-00154-CVE-TLW (N.D. Okla.).  Plaintiff notified Defendant of the lawsuit on May 21, 2009.

According to the proposed second amended complaint, on an unspecified date after Unitherm filed its lawsuit, Yubert Envia, Plaintiff's vice-president of turkey and prepared foods, called Tim Moskal, Defendant's vice-president of sales.  Moskal assured Envia that Unitherm's patent was not valid and that Defendant would pay Plaintiff for any expenses it incurred in defending the lawsuit.

On July 10, 2009, Plaintiff and Defendant entered into the "Agreement of Common Interest, Joint Defense and Tolling of Rights" (the "tolling agreement") to address defense of the lawsuit and preserve both parties' rights.  The tolling agreement specified that it "in no way constitute[d] a waiver of any rights Foster Farms and Alkar have against each other, including any right of indemnity against infringement and/or warranty of non-infringement."  Doc. 45 at 7, ¶ 23.  The agreement also stated:

> The Parties further recognize that unresolved issues exist between them relating to certain indemnities for and/or warranties against patent infringement, and the rights and liabilities appurtenant thereto.  This Agreement does not waive any

4

rights or defenses of the Parties with respect to these issues, given that such suit is brought within one year of the final resolution of the Litigation either by settlement or final, non-appealable judgment.

Doc. 45 at 7, ¶ 23.

During the pendency of the lawsuit, Defendant paid no expenses or fees to Plaintiff as indemnification.  Plaintiff alleges that, based on the contractual provisions, and Hanson's and Moskal's representations, it assumed that Defendant would indemnify its costs and that it incurred legal fees and expenses totaling approximately $1,128,000 in its defense of the lawsuit. Through diligent investigation, Plaintiff uncovered evidence that Unitherm had marketed the patented invention before applying for the patent, invalidating the patent.  On August 9, 2010, Plaintiff and Unitherm filed a joint stipulation of dismissal with prejudice.  The settlement included concessions that Plaintiff claims to have secured at Defendant's behest, which benefitted Defendant and its other customers, but not Plaintiff.  Assuming its expenses to be indemnified by Defendant, Plaintiff secured the concessions by foregoing its own claim for fees and expenses from Unitherm.  Following the settlement, Plaintiff sought recoupment of its expenses, which Defendant refused to provide.

## II.    Procedural Background

On December 13, 2010, Plaintiff sued Defendant in the Stanislaus County Superior Court, alleging claims for breach of contract, breach of express warranty, breach of implied warranty, implied contractual indemnity, promissory estoppel, and unjust enrichment.  On January 6, 2011, Defendant removed the action to this Court based on diversity.  On February 10, 2011, Defendant moved to dismiss the case pursuant to F.R.Civ.P. 12(b)(6).  Following the parties' unsuccessful attempt at early settlement, on June 21, 2011, the Court dismissed without

prejudice Plaintiff's claims of breach of contract, breaches of express and implied warranty, and promissory estoppel, granting Plaintiff leave to amend.  The Court dismissed with prejudice Plaintiff's claims of implied contractual indemnity and unjust enrichment.

On July 6, 2011, Plaintiff moved for reconsideration of the Court's dismissal of its first, second, and third causes of action, arguing that the Court erred in relying on the statute of limitations set forth in California Commercial Code § 2725.  Plaintiff argued that, in indemnification claims, the statute of limitations runs from the date of discovery of the breach. On November 21, 2011, the Court granted Plaintiff's motion for reconsideration, denied Defendant's motion to dismiss Plaintiff's claims for breach of contract and breach or express warranty, but dismissed without prejudice Plaintiff's claim for breach of implied warranty. Plaintiff filed its first amended complaint on December 1, 2011.

On January 16, 2012, Defendant moved to dismiss Plaintiff's first amended complaint. Following briefing by both parties, on April 11, 2012, the Court dismissed with prejudice Plaintiff's claims of fraud, negligent misrepresentation, breach of contract (based on the Hanson letter), and promissory estoppel (counts three through six).  Defendant answered the complaint on May 4, 2012.

On August 13, 2012, Plaintiff filed this motion to amend the complaint, seeking to add claims for breach of contract, promissory estoppel, and fraud based on Moskal's representation to Envia that Defendant would indemnify Plaintiff in its defense of Unitherm's infringement action.

**III.**   **Judicial Notice**

Although neither party has moved the Court to take judicial notice of the tolling agreement, Plaintiff objects to the Court's taking judicial notice, claiming that the parties dispute

the agreement's meaning and that a court may not interpret its language in a motion to amend. In

analyzing Defendant's motion to dismiss the first amended complaint, this Court noted that the

plain language of the agreement provides that "[t]he parties further recognize that unresolved

issues exist between them relating to certain indemnities for and/or warranties against patent

infringement, and the rights and liabilities appurtenant thereto." Doc. 56 at 11 n. 3.   Because

Paragraph 4 of the agreement is set forth in paragraph 26 of the second amended complaint (Doc.

64-1 at 9), this Court is not required to take judicial notice to consider it in the course of its

analysis of Plaintiff's motion to amend.

## IV.   <u>Standard for Amending Pleadings</u>

If a party has already amended its pleadings once as a matter of course, further

amendment requires the consent of the adverse party or leave of the court.   F.R.Civ.P. 15(a).   The

grant or denial of leave to amend the complaint is a matter of the court's discretion.   *Swanson v.*

*U.S. Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996).   In general, courts should exercise their

discretion to permit amendment with "extreme liberality, when justice so requires."   *Owens v.*

*Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), *quoting Moronga Band*

*of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).   Leave to amend should be

granted if, in light of the facts and circumstances, the plaintiff may be able to state a claim.   *DCD*

*Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

Nonetheless, granting leave to amend may be inappropriate under circumstances such as

undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, or futility of amendment.   *Foman v. Davis*, 371 U.S. 178, 182

(1962).  *See also Leighton*, 833 F.2d at 186 (listing as relevant factors bad faith, undue delay,

prejudice to the opposing party, futility of amendment, and the moving party's prior

amendments).  The factors are not to be given equal weight.  *Eminence Capital, LLC v. Aspeon,*

*Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  Nor should a court address the factors rigidly or

evaluate them mechanically: The court should "examine each case on its facts" and determine the

propriety of granting leave to amend on that basis.  *SAES Getters S.p.A. v. Aeronex, Inc.*, 219

F.Supp.2d 1081, 1086 (S.D.Cal. 2002), *quoting* 6 Charles Alan Wright, et al., *Federal Practice*

*and Procedure Civil 2d* § 1430 (2d ed. 1990).  Prejudice to the opposing party must be given the

greatest weight.  *Eminence Capital*, 316 F.3d at 1052.  Ultimately, the policy underlying the

determination is facilitating decision of the case on its merits, rather than on procedural

technicalities.  *Leighton*, 833 F.2d at 186.

## V.   **Futility of Amendment**

Futility is a recognized basis for denying a proposed amendment.  *Kiser v. General Elec.*

*Corp.,* 831 F.2d 423, 428 (3d Cir. 1987), *cert. denied*, 485 U.S. 906 (1988).  The test for futility

"is identical to the one used when considering the sufficiency of a pleading challenged under

Rule 12(b)(6)."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  "[T]o survive a

motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible

claim to relief."  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir.

2010), *citing Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  "[D]ismissal for

failure to state a claim is 'proper only where there is no cognizable legal theory or an absence of

sufficient facts alleged to support a cognizable legal theory.'"  *Shroyer*, 622 F.3d at 1041, *quoting*

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  *See also Zucco Partners, LLC v. Digimarc*

8

*Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008); *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Plaintiff's new claims of fraud, promissory estoppel, and breach of contract based on Moskal's representation to Envia are not cognizable.

The Federal Rules of Civil Procedure and applicable case law demand a more detailed allegation of facts than that set forth in the proposed complaint.  Rule 8 provides:

> **Claim for Relief.**  A pleading that states a claim for relief must contain:
>
> 1.    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> 2.    a short and plain statement of the claim showing the pleader is entitled to relied; and
>
> 3.    a demand for the relief sought, which may include relief in the alternative or different types of relief.

F.R.Civ.P. 8(a).

Rule 8 is intended "to protect defendants from undefined charges, and to keep the federal courts free of frivolous suits." *Howard v. Koch*, 575 F.Supp. 1299, 1304 (E.D. N.Y. 1982).  Put another way, "[t]he purpose of Rule 8(a)(2) is to avoid verbose allegations; to notify the defendants of the claim upon which plaintiff seeks recovery; to assist and not deter the disposition of the litigation on its merits; to achieve brevity and clarity in pleading and to shape the issues for trial." *Levine v. McDonald's Corp.*, 1979 WL 1648 at *1 (D. Ariz. June 12, 1979) (No. Civ. 77-601 Phx. WPC).  "It is the duty and responsibility, especially of experienced

///

counsel, to state those essentials in short, plain, and non-redundant allegations." *Id.* at *2, *quoting Silver v. Queen's Hospital*, 53 F.R.D. 223, 226 (D. Hawaii 1971).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949, *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555.  While factual allegations are accepted as true, legal conclusions are not.  *Iqbal*, 129 S.Ct. at 1949**.**

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*).  A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56 (*internal quotation marks and citations omitted*).  To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for his or her claim.

The proposed second amended complaint falls short of this standard.  Plaintiff repeatedly offers legal conclusions in its favor in lieu of setting forth facts supporting its claims.  As a result,

///

the proposed second amended complaint fails to set forth cognizable claims of fraud, promissory

estoppel, and breach of contract in relation to Moskal's telephone representation.

### A. Fraud

To state a claim for fraud under California law, a plaintiff must allege "(a)

misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

(or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

resulting damages." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009), *quoting*

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974 (1997).  When a plaintiff

alleges fraud, as Plaintiff does in its proposed fifth cause of action, it "must state with

particularity the circumstances constituting fraud." F.R.Civ.P. 9 (b) (*emphasis added*).  "An

allegation of time or place is material when testing the sufficiency of a pleading." F.R.Civ.P. 9

(f).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally." F.R.Civ.P. 9 (b).  The Rule 9(b) particularity standard requires "an account of the

time, place, and specific content of the false representation, as well as the identities of the parties

to the misrepresentations."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

A plaintiff must set forth the circumstances constituting fraud "with particularity."

*Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000), *cert. denied*, 532 U.S. 1021

(2001).  Particularity contemplates facts supporting the "the who, what, where, and when of the

alleged fraud."  *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.),

*cert. denied*, 528 U.S. 874 (1999).  "[T] he particularity requirement of Rule 9(b) is designed to

discourage a 'sue first, ask questions later' philosophy."  *Pirelli Armstrong Tire Corp. Retiree*

*Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011), *quoting Berman v.*

*Richford Industries, Inc.*, 1978 WL 1104 at *5 (S.D. N.Y. July 28, 1978) (No. 78 Civ. 54).  A plaintiff must identify the complete facts supporting a fraud claim before alleging fraud in its complaint: allegations of fraud may not depend on facts to be uncovered in discovery.  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).; *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  Plaintiff's vague allegation of a misrepresentation made in a telephone conversation sometime "[a]fter Unitherm filed its lawsuit" falls short of the required particularity.

The proposed second amended complaint also fails to allege justifiable reliance, which requires the plaintiff to set "'forth facts to show his or her actual reliance on the misrepresentations was justifiable, so that the cause of the damage was the defendant's wrong and not the plaintiff's fault.'"  *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1066 (2012).  A mere conclusory allegation that the plaintiff relied on the misrepresentation is insufficient.  *Id.* at 1066-67.  The complaint must allege "'facts showing that the actual inducement of plaintiffs was justifiable or reasonable.'"  *Id.* at 1067, *quoting Lingsch v. Savage,* 213 Cal.App.2d 729, 739 (1963).  In particular, the complaint must allege that the misrepresentation was material to the plaintiff's reliance.  *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 854 n. 17 (2007).  The proposed second amended complaint does not do so.

In examining Plaintiff's prior allegations alleging promissory estoppel based on the Hanson letter, the District Court found:

> The July 2009 Tolling Agreement, entered into shortly after the filing of the Unitherm lawsuit, expressly acknowledged that the parties disagreed about the rights and liabilities relating to patent indemnification.  Thus, any reliance on the

///

alleged promise in the Hanson letter was unreasonable with respect to the Unitherm lawsuit.

Doc. 56 at 17.

The same reasoning applies when evaluating the allegations of fraud based on Moskal's representation. Although the proposed second amended complaint does not allege the timing of the purported telephone conference between Moskal and Envia, whether Moskal's representation occurred before or after the parties' entering the tolling agreement is not decisive. Just as was the case with Hanson's letter, Plaintiff's alleged reliance on Moskal's oral representation is not justifiable in light of the tolling agreement, a written document memorializing the parties' disagreement regarding the rights and liabilities relating to indemnification.

In any case, the proposed second amended complaint includes no factual allegations supporting the proposition that Plaintiff relied on Moskal's representation at all. Plaintiff needed to defend the Unitherm lawsuit whether or not Defendant would indemnify its defense costs. The proposed second amended complaint is still "devoid of facts tending to show that these actions were undertaken in exchange for [Moskal's alleged promise], as opposed to obligations under the 2002 Purchase Agreement, or simply business decisions." *See* Doc. 56 at 16.

Nor does any factual allegation in the proposed second amended complaint suggest that Plaintiff's decision to secure provisions favorable to Defendant or to forgo costs and attorneys' fees was induced by Moskal's representation of indemnification. In fact, the proposed second amended complaint is completely devoid of factual allegations setting forth Defendant's alleged request that Plaintiff's settlement with Unitherm include provisions favorable to it or any representation that the fact or amount of indemnification depended on Plaintiff's securing such

concession.  The proposed second amended complaint fails to set forth a cognizable claim of

fraud.  Because the proposed second amended complaint fails to set forth a cognizable claim of

fraud, this Court need not address the application to it of the economic loss rule.

## B.    Promissory Estoppel

"A promise which the promisor should reasonably expect to induce action or forbearance

of a definite and substantial nature on the part of the promissee and which does induce such

action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

*Signal Hill Aviation Company, Inc. v. Stroppe*, 96 Cal.App.3d 627, 640 (1979), *quoting*

Restatement of Contracts § 90.  "[P]romissory estoppel is distinct from contract in that the

promissee's justifiable and detrimental reliance on the promise is regarded as a substitute for

consideration required as an element of an enforceable contract."  *Signal Hill*, 96 Cal.App.3d at

640.  Under California law, a plaintiff claiming promissory estoppel must allege "(1) a clear

promise, (2) reliance, (3) substantial detriment, and (4) damages 'measured by the extent of the

obligation assumed and not performed.'"  *Poway Royal Mobilehome Owners Ass'n v. Poway*,

149 Cal.App.4th 1460, 1471 (2007)*, quoting Toscano v. Greene Music*, 124 Cal.App.4th 685,

692 (2004).

In the third cause of action of the proposed second amended complaint, Plaintiff alleges

that it continued its business relationship with Defendant and incurred expenses defending the

suit as a result of Moskal's representation that Defendant would indemnify Plaintiff for any

expenses incurred in defending the Unitherm lawsuit.  Defendant responds that Plaintiff could

not have reasonably relied on Moskal's representation, particularly in light of the tolling

agreement.  As set forth in the examination of the fraud allegations above, the Court agrees that

Plaintiff could not have reasonably relied on Moskal's representation in light of the express statement in the tolling agreement that the parties did not agree on rights and responsibilities relating to indemnification.

Nor are the vague and conclusory allegations that Defendant's counsel somehow represented that the speed and amount of indemnification depended on Plaintiff's securing concessions beneficial to Defendant and its customers (Doc. 56 at 16) sufficient to support a promissory estoppel claim.  "[A] promise that is vague, general or of indeterminate application is not enforceable."  *Aguilar v. Internat'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 446 (9th Cir. 1992) (*internal quotation marks and citations omitted*).

The proposed second amended complaint fails to set forth a cognizable promissory estoppel claim.

## C.     Breach of Contract

"A cause of action for breach of contract requires proof of the following elements:  (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1230 (2008).  To prove the existence of a contract, a plaintiff must demonstrate: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration.  California Civil Code § 1550.

Mutual consent of the parties is an essential element of any contract.  *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal.App.4th 1224, 1230 (2004).  Mutual consent means that the parties agree on the same objective in the same sense.  California Civil Code § 1580; *Bustamante v. Intuit, Inc.*, 141 Cal.App.4th 199, 209 (2006).  Mutual consent is necessary whether a contract is

15

express or implied.  California Civil Code § 1619; *Yari v.Producers Guild of America, Inc.*, 161 Cal.App.4th 172, 182 (2008).  "The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe." *Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 811 (1998).

The fourth cause of action of the proposed second amended complaint alleges that Envia asked Moskal "what would happen if Foster Farms spent money defending the Unitherm action, to which Mr. Moskal unequivocally replied that Alkar would pay Foster Farms for any expenses incurred in connection with defending the Unitherm patent infringement lawsuit."  Doc. 64-1 at 17.  Plaintiff then offers its legal conclusion that Defendant "represented to Foster Farms that it would be indemnified for its defense of the Unitherm lawsuit." *Id.*  Plaintiff further concludes that Plaintiff consented to Defendant's offer in the course of the telephone conference and that Moskal's statement "constituted a contractual obligation to indemnify Foster Farms for any expenses it incurred in defending the Unitherm lawsuit." *Id.* at 17-18.  In assessing whether Plaintiff's breach of contract claim is cognizable, factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 129 S.Ct. at 1949**.**  The sole alleged fact, that Moskal stated that Defendant would reimburse Plaintiff for expenses associated with its defense of the Unitherm lawsuit, is not sufficient to establish mutual consent.

As the District Court previously found with regard to the Hanson letter, the parties' prior course of conduct does not suggest mutual assent sufficient to render Moskal's statement an implied contract. *See* Doc. 56 at 15.  The 2002 Purchase Agreement, for example, was a detailed and lengthy written contract duly executed by the presidents of Plaintiff and Defendant.

Similarly, in July 2009, the parties entered into the detailed, written tolling agreement, to define their sharing of information and documentation as a means of developing and pursuing defenses to certain issues in the litigation.  Doc. 67-3 at 2.  Plaintiff has alleged no other conduct to suggest that the parties would have intended to enter into a contract with a potential liability of more than a million dollars based on a single comment from one of Defendant's officers in the course of a telephone conversation.

Plaintiff alleges that in reliance on the supposed contract formed by Moskal and Envia, it invested substantial employee time in preparing materials for the lawsuit's defense, kept Defendant informed on the lawsuit's progress, obtained concessions in the settlement agreement favoring Defendant, and elected not to pursue its claims for recovery of attorneys' fees and costs in the Unitherm settlement.  But the proposed second amended complaint alleges no facts to support the conclusion that Plaintiff took these actions as a result of Moskal's representation, as opposed to Defendant's obligations under the 2002 purchase agreement, the necessity of defending itself in the lawsuit without regard to the availability of indemnification, or simply as business decisions.

In addition, Defendant emphasizes the absence of consideration for a new contract based on Moskal's representation.  As noted above, consideration is a necessary element in proving a contract's existence.  California Civil Code § 1550.  Under California law, good consideration is:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . . .

California Civil Code § 1605.

17

For consideration to be valid, the recipient of the promise must provide a bargained-for benefit or prejudice in exchange for the promise. *Steiner v. Thexton*, 48 Cal.4th 411, 421 (2010). A promisee's reliance on the promise to its detriment or the promisor's gain of advantage from its promise, does not establish consideration absent bargaining or an agreed exchange. *Saks v. Charity Mission Baptist Church*, 90 Cal.App.4th 1116, 1135 (2001). The proposed second amended complaint includes no factual allegations to support a conclusion that consideration existed for Moskal's "promise."

The proposed second amended complaint fails to state a cognizable claim for breach of contract arising from Moskal's representation.

## VI.   **Untimeliness**

Plaintiff argues that, since the discovery period began recently and the parties have yet to exchange documentary evidence or conduct depositions, untimeliness is not a concern here. Defendant counters that Plaintiff's pleading new claims based on Moskal's representation is untimely since Plaintiff has long been aware of the facts and the claim. The Court agrees that, in this instance, untimeliness arises not because of the timing of discovery or the trial date but because Plaintiff has failed to advance its contentions in a timely manner, despite its claims of having long had knowledge of the facts on which the new contentions are based.

In evaluating a motion for leave to amend, a court may consider the moving party's undue delay in pursuing the amendment. *Bowles v. Reade*, 198 F.3d 752, 757-58 (9th Cir. 1999). On its own, delay is not a sufficient basis for a court's denying a request to amend. *Leighton*, 833 F.2d at 187. When a plaintiff makes a motion to amend early in the discovery period, with no trial date or pretrial conference pending, delay is not generally unjust. *Id.* at 187-88. Delay may

18

justify denying a motion to amend, however, if the court also finds prejudice to the opposing

party, bad faith of the moving party, or futility of amendment.  *Bowles*, 198 F.3d at 758.

In addition to considering the case's procedural status, a court must examine "whether the

moving party knew or should have known the facts and theories raised by the amendment in the

original pleading."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  In this case,

Plaintiff itself discloses in its brief that it was aware that Moskal's representation supported its

claims at the time of the prior amendments but that it chose not to include factual allegations

regarding Moskal's representation in its prior complaints, intending to use them as evidence in its

case in chief.  Nonetheless, Plaintiff contends that it relied on Moskal's representation from the

time that they were made.[1]  In light of Plaintiff's own representation, the Court has no alternative

but to find that Plaintiff knew about Moskal's representation and the claims they allegedly

support from the beginning of this action.

Not only did Plaintiff fail to include allegations relating to Moskal's representation in its

prior complaints, it never disclosed Moskal's alleged representation prior to this motion, even in

the face of Defendant's two prior dismissal motions.  A district court's discretion is especially

broad in cases in which the moving party has previously amended its complaints but has failed to

allege facts supporting its claim with the requisite specificity.  *Zucco*, 552 F.3d at 1007.  The

proposed amendment is untimely.

Granting Plaintiff's untimely motion to amend would also be prejudicial.  Prejudice

results when an amendment would unnecessarily increase costs or diminish the opposing party's

---

[1]  Remarkably, the proposed second amended complaint does not allege even an approximate date on which Moskal made the representation.

ability to respond to the amended pleading. *Morongo Band*, 893 F.2d at 1079. For example, where a plaintiff delayed its motion to amend nearly two years after filing the original complaint and the proposed amendment would have greatly changed the nature of the litigation, the district court properly denied the motion to amend as prejudicial. *Id.*

Two years have also elapsed since Plaintiff filed its original complaint in this case. Despite arguing that it has consistently known of, and relied on, Moskal's misrepresentation, Plaintiff never disclosed that knowledge or reliance in the course of two prior dismissal motions that required substantial expenditures of time and resources by both parties. Requiring Defendant to respond to Plaintiff's already untimely allegations would unnecessarily delay the resolution of this case, require unnecessary expenditures by both parties, and impose additional burdens on a busy Court. Litigation expenses become prejudicial when additional costs could easily have been avoided had the proposed amendments been included within the original pleading. *Amerisource-Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Accordingly, this Court concludes that prejudice bars its granting Plaintiff leave to file an untimely amendment.

**VII.   Conclusion and Order**

The Court having found the new claims set forth in the proposed second amended complaint to be futile and untimely, Plaintiff's motion for leave to amend the complaint is denied.


IT IS SO ORDERED.

**Dated:     December 7, 2012                          /s/ Sandra M. Snyder**

1                                                    UNITED STATES MAGISTRATE JUDGE